# IN RE PRINGLE'S ESTATE

## SPENCER, ET AL. v. PRINGLE

(Two Cases)

(Nos. 1954, 1956; April 19, 1937; 67 Pac. (2d) 204)

For the appellants in Case No. 1954 and the respondents in Case No. 1956, there were briefs by *John D.*

354

*Dawson* and *T. C. Daniels* of Douglas, and oral argument by *Mr. Daniels*.

For the respondent in Case No. 1954 and the appellant in Case No. 1956, there were briefs by *Preston T. McAvoy* of Newcastle and *Joseph Garst* of Douglas, and oral argument by *Mr. Garst.*

356

*Dawson* and *Daniels* in reply.

RINER, Justice.

These two cases come to this court by direct appeal proceedings predicated upon the same record. They have been briefed separately, but they were argued together, and one opinion will suffice to dispose of both. They present attacks upon a judgment of the district court of Converse County fixing executor's and counsel fees in the matter of the estate of Theodore Pringle, deceased.

### Case No. 1954

The judgment aforesaid was dated May 25, 1935, apparently having been signed on that date. The journal entry thereof has upon it a statement reading, "Filed for record this 29 day of May, A. D. 1935. Violet D. Stewart, Clerk of the District Court." Upon examination of the original form of the judgment presented to the clerk for her guidance in making the proper entry of the judgment on the journal of the court, the quoted statement aforesaid also appears thereon in the form of the official filing stamp, the name of the clerk being signed in ink. In the notification given the trial judge by the clerk of the filing of the record on appeal in her office, which she is required

to give by statute (Section 89-4910, W. R. S. 1931), the clerk states inter alia, above her signature, in reference to the judgment in question, "which said judgment was signed by you on the 25th day of May, A. D. 1935, and filed for record in the District Court for the County of Converse, on May 29, 1935." Otherwise than as stated it does not appear when the judgment was entered. It is evident, however, that it was not entered before the 29th day of May, 1935, for on that date the form mentioned above reached the clerk and received the filing stamp of her office.

This court has indicated that the record on appeal must show not only the entry of the judgment under review, but also the date of entry, and unless the record discloses the contrary, it will be presumed that it was entered either on the day it bears date or the date of its rendition. Cottier v. Sullivan, 47 Wyo. 72, 31 Pac. (2d) 675; Coffee v. Harris, 27 Wyo. 394, 197 Pac. 649. In Cottier v. Sullivan, supra, we said:

"It is evident that, following a common and proper practice in cases of this kind (Hahn v. Citizens State Bank, supra, at p. 479 of 25 Wyo., 171 P. 889, 172 P. 705), the form of the judgment was approved and signed by the trial judge, and then delivered to the clerk for entry. The delivery of this approved and signed form to the clerk for entry may properly be considered the last act in the rendition of the judgment. Though, perhaps, the form for judgment need not have been 'filed' by the clerk, we accept his statement in his certificate, that it was filed July 5, 1932, as showing that it was delivered to him on that day. This is confirmed by the file mark on the copy of the judgment contained in the record. We think, therefore, that the record shows that the judgment was rendered on July 5, 1932. As the record shows its entry on the journal, we shall presume that it was entered on the day of its rendition, as there is nothing to indicate the contrary."

It was held in Hahn v. Citizens State Bank, 25 Wyo.

467, 171 Pac. 889, 172 Pac. 705, that a notice of appeal served before the judgment appealed from was entered was premature and the court was without jurisdiction to consider the case sought to be brought here. See also Culbertson v. Ainsworth, 26 Wyo. 214, 181 Pac. 418; Fertile Valley Canal Co. v. Kearney, 37 Wyo. 475, 263 Pac. 620. Appellants' notice of appeal in this case is dated the 27th of May, 1936, and it was served on opposing counsel on May 28th, 1935. It is apparent from the record that the judgment appealed from was not entered until at least the 29th of May. Under the foregoing cited decisions, this court is without jurisdiction to consider the appeal thus prematurely taken, and it must be dismissed.

## Case No. 1956

The judgment above mentioned was rendered upon a hearing had by the district court of Converse County upon objections filed by the "devisees, legatees and/or survivors of them," under the last will and testament of Theodore Pringle, deceased, to the final account of the executor of said will, Charles Pringle. The questions which arise upon the executor's appeal from said judgment have to do with certain items alleged to have been accounted for in the executor's final account, which it is claimed on behalf of the appellant the trial court erroneously failed to consider in fixing his compensation as personal representative of the deceased and the compensation of his attorneys.

The following statutes of this state, which appear as a part of our Probate Code, should be kept in mind in connection with the questions thus submitted, viz., Section 88-2602, W. R. S. 1931, which provides:

"Every executor and administrator is chargeable in his account with the whole of the estate of the decedent which may come into his possession, at the value of the appraisements contained in the inventory, except as

provided in the following sections, and with all the interest, profit and income of the estate";

Section 88-2603, W. R. S. 1931, reading:

"He shall not make profit by the increase, nor suffer loss by the decrease or destruction, without his fault, of any part of the estate. He must account for the excess when he sells any part of the estate for more than the appraisement, and if any is sold for less than the appraisement, he is not responsible for the loss, if the sale has been justly made";

Section 88-2604, W. R. S. 1931, worded:

"No executor or administrator is accountable for any debts due to the decedent, if it appears that they remain uncollected without his fault";

Section 88-2607, W. R. S. 1931, fixing the compensation of personal representatives in estate matters in this language:

"When no compensation is provided by the will, or the executor renounces all claim thereto, he shall be allowed commissions upon the amount of the estate accounted for by him, as follows: for the first one thousand dollars, at the rate of ten per centum; for all above one thousand dollars and not exceeding five thousand dollars, at the rate of five per centum; for all above five thousand dollars and not exceeding twenty thousand dollars, at the rate of three per centum; for all above twenty thousand dollars at the rate of two per centum. The same commission shall be allowed to administrators. In all cases such other allowance may be made as the court may deem just and reasonable for any extraordinary services, but the total amount of such extra allowance must not exceed one-half the amount of commission allowed by this section. All contracts between an executor or administrator, and an heir, devisee or legatee, for a higher compensation than that allowed by this section, shall be void";

and Section 88-2608, W. R. S. 1931, governing allowances to their counsel, thus:

"The attorneys of any executor or administrator

shall be allowed, for his or their services, such amount as may be fixed by the court, not to exceed the amount allowed the executor or administrator; provided, however, that in all cases where the estate shall be involved in actual litigation, the court may, in its discretion, allow such attorneys greater compensation."

It will be observed that under the foregoing sections of the statutes the executor is chargeable with the estate coming into his possession at its inventory value, except that he is not to suffer loss through the decrease or destruction of any part thereof, without his fault, and he is not accountable for any debts owing the estate if they remain uncollected, without his fault. Also, when his compensation is not fixed by the will or he renounces all claim thereto, he is to be paid commissions "upon the amount of the estate accounted for by him." It is necessary to determine, therefore, what is meant by the language of the law "estate accounted for." Many commonwealths of the Union, particularly those of the western part of the nation, whose probate law, as in Wyoming, was originally largely borrowed from that of the state of California, use these words in fixing commissions to be allowed personal representatives.

In United States v. Rehwald, 44 Fed. (2d) 663, the court, in defining the words "account for," said:

"The term 'account for' has been in various state adjudications interpreted to mean paying over the money to the person entitled thereto. See State v. Williams, 77 Mo. 463; Cushman v. Richards, 100 Mass. 232. And in Thomas v. Mahan, 4 Me. (4 Greenl.) 513, the court said: 'The expression "holden to account for," means, not merely to "render an account of," but, "to be responsible for," it stands in opposition to the right of appropriation to one's own use and benefit. In common cases of principal and agent, the expression would be as well satisfied by an honest return of that part of the principal's goods which the agent could not sell as by a payment of their proceeds in case he

has sold them. Such is the common understanding of language thus used.' "

To the same effect is Moody v. Pacific Surety Co., 41 Calif. App. 287, 182 Pac. 802.

In the treatise dealing with procedure in the administration of decedents' estates in the western states, aforesaid, 2 Bancroft's Probate Practice, Sec. 418, pp. 785, 6, says:

"Nevertheless, since an inventory and appraisement of the property is universally required and the representative is prima facie chargeable in his accounts with the property shown in his inventory at its appraised value, where the statute makes property accounted for the basis of computation of commissions the inventory and appraised values constitute a prima facie basis for computation. In the absence of a showing that the value of the estate differs from the appraised value, such value will control. * * *

"The inventory valuation is not, however, conclusive for the purpose of fixing commissions. It is only prima facie evidence of the value of the property. It may or may not afford a basis of calculation; if not satisfactory to all concerned, the question of value should be left open to inquiry, and such inquiry may be had by proof of value upon settling the representative's account. The value of property sold by the representative, in the course of his administration or under a deed of trust executed by the decedent, is fixed by the amount received on such sale."

Of similar import is Section 1025, page 461 of 118 California Jurisprudence, and In re Estate of Joaquin Fernandez, 119 Cal. 579, 51 Pac. 851. In the case last cited the court remarks: "If the administrator takes possession of the estate, and it is distributed to the heirs, it is thereby 'accounted for' by him, and, if no objection is made by them to the valuation in the inventory, that would form the basis of estimating his commissions."

4 Schoulder on Wills, Executors and Administrators

(6th Ed.) Sec. 3041, p. 2541, speaking of the limitations upon the right of personal representatives to commissions, says: "Full commissions in good money cannot be charged upon collections made in depreciated currency, * * * nor on property lost or destroyed." To the same effect is 3 Woerner's American Law of Administration, Sec. 528, p. 1816. See also 24 C. J. 984, Sec. 2419; Everfield v. Everfield, 4 Harris & Johnson (Md.) 12; In re Lester, 172 App. Div. 509, 158 N. Y. S. 763; May, Admr. v. Green, 75 Ala. 162. And the Supreme Court of California in the case of In re Connor's Estate, 200 Cal. 646, 254 Pac. 269, has said:

"The third and fourth exceptions are addressed to the allowance of compensation to the executor and his attorney. The compensation was computed upon the reappraised value of the estate, including a realization loss of $100.00. The executor was properly given credit for this loss, but the item should not have been included in the aggregate upon which the compensation of himself and his attorney was computed. Section 1618, Code Civ. Proc.; Estate of Fernandez, 119 Cal. 579, 585, 51 P. 851."

The court of last resort in the State of Washington, construing statutory language closely resembling ours as quoted above, in the case of In re Sour's Estate, 17 Wash. 675, 50 Pac. 587, said:

"Nor are our statutory provisions clear with reference to the further question as to whether such compensation must be based upon the appraised value of the real estate, or upon its actual value at the time of the accounting. Section 1051 provides that every executor or administrator shall be chargeable in his accounts with the whole estate of the deceased which may come into his possession at the value of the appraisement contained in the inventory, except as specified in other sections which provide that he shall not make a profit by the increase, nor suffer loss by the decrease or destruction, without his fault, of any part of the estate, and that he shall be accountable for the excess when the property is sold and brings more than

the appraisement. Section 1056 provides for a commission on the whole estate accounted for by him, according to a percentage of the money value, with the provision for a further allowance for extraordinary services not required in the common course of duty. In this case the appraised value of the real estate was over $34,000, while it is contended that the actual value at the time of the settlement was not to exceed $11,000. The lower court allowed a commission upon the appraised value, holding that the same was arbitrarily fixed by the statutes. But it seems to us that the appraisement was not intended to fix anything more than a prima facie value, which should stand if unquestioned. This is evidenced by the fact that the other sections of the Code referred to provide that the administrator shall account for any excess over the appraised value in case of a sale, and shall not be liable for any loss where the same occurs without his fault; and our attention has been called to no case deciding that the appraised value is conclusive, but there are many cases holding that the appraisement is only prima facie evidence of the value of the estate. (Citing authorities.) We are of the opinion that the amount of the compensation should be fixed upon the value of the estate at the time of the settlement, the appraised valuation being disputed."

So in the case of In re Hagerty's Estate, 97 Wash. 491, 166 Pac. 1139, the same court held that where the appraised value of an estate is greater than its value when the executor's final account is settled, his compensation should be fixed on the value as of the time of such settlement.

It is undoubtedly equitable that when property of an estate is lost or destroyed without fault of the executor he should lose his commissions thereon just as the distributees of the estate are compelled to bear the loss of the property, the statute excusing him from responsibility therefor. Until he has paid or delivered over the property to those legally entitled to it, he has not "accounted" therefor.

In the case at bar, the estate had the sum of $4,378.83

in cash and $22,262.81 evidenced by certificates of deposit in the First State Bank of Douglas. During the course of administration of the estate the bank failed, and the executor filed a claim on behalf of said estate with the State Bank Examiner in charge of the failed institution, in the total sum of $26,641.64. The estate also owned fifty shares of stock of the par value of $100.00 each in said bank, and this item was appraised in the inventory at par, as, of course, were the cash and certificates of deposit aforesaid. There is no claim that the bank's failure was due to any fault on the part of the executor.

The Examiner in liquidating the affairs of the defunct institution, at the time of the executor's final settlement, had paid dividends on the aforesaid claim of the executor to the extent of $7,992.48. Five thousand dollars of this amount the Examiner retained in payment of the statutory stockholders' liability on said stock (W. R. S. 1931, Sec. 10-508), and the balance, or $2,992.48, was paid to the executor of the estate. It is now claimed in the latter's behalf that he should receive commissions on the inventoried value of the cash aforesaid, the certificates of deposit in the bank and the bank stock.

Under the authorities cited above, we are obliged to conclude that the contention is a mistaken one. He is not entitled to any commissions on the bank stock, for at the time of final settlement it was not only a total loss in value, but had imposed a liability upon the estate. He is not entitled to commissions upon the entire claim of $26,641.64, but only upon that portion thereof realized through the dividends upon said claim declared in liquidation of the bank's affairs. This was the sum of $7,992.48, at the time the final settlement matter was heard by the court. The estate has not been settled and if further dividends have or shall come into the hands of the executor, before distribution, it would

seem that commissions might properly be allowed thereon.

It is contended for the appellant executor that the court did not allow commissions upon that part of the dividends evidenced by the $5,000.00 retained by the State Examiner to liquidate the liability on the bank stock. If that is so, then commissions should be awarded thereon, for regardless of the system of bookkeeping that amount was paid to the person legally entitled to receive it, i. e., the State Examiner, and hence was accounted for by the executor in our view of the transaction. But the point is disputed, and it is not altogether clear from the record before us whether the $5,000.00 aforesaid was or was not included in the computation of commissions and fees, though it would rather seem, as we read the final account, that the court did consider this sum in fixing the commissions. At any rate, this is merely a matter of mathematical computation, and under the authorities presently to be cited, may be corrected by the district court of Converse County through an order nunc pro tunc at any time notwithstanding the term of court at which the judgment was entered has lapsed.

It is also urged for the appellant that the trial court interpreted Section 88-2608, W. R. S. 1931, supra, to mean that for extraordinary services the attorney for the executor is limited in amount to a sum no greater than may be allowed to the executor. If that were so, then we think the trial court was mistaken. Reed v. Taliaferro, 37 Wyo. 107, 113, 259 Pac. 815, 2 Bancroft's Probate Practice, Sec. 438, p. 821. If the view suggested as held by the trial court were to prevail, it would in such event often be impossible to conduct exhaustive and important litigation by which the estate would be either greatly benefited or its very existence preserved.

But we are not convinced that the court below took

that view and our attention is not directed to anything in the record which would lead us to think so. There was some litigation in which the estate was engaged, but the attorneys were given an extra allowance for extraordinary services of one-half over and above the usual commissions fixed by law. From the record before us we cannot see that the court was in error as to the particular point argued.

Finally, at the argument and in the briefs it was asserted that some items of the final account were duplicated and hence were reckoned more than once in the computation of the executor's and attorneys' commissions and fees. If that be so, then it is a mere matter of mathematical calculation to correct the error, something that may be done at any time by the district court on motion. See Sec. 89-2301, W. R. S. 1931, subdivision 3.

34 C. J. 229-31, Section 450, says:

"The court, at any time either before or after the expiration of the term at which a judgment was rendered, or of the statutory period within which judgments may be amended, may correct or amend clerical errors and misprisions of its officers so as to make the record entry speak the truth and show the judgment which was actually rendered by the court. The term 'clerical error' as here used must not be taken in too narrow a sense. It includes not only errors made by the clerk in entering the judgment, but also those mistakes apparent on the record, whether made by the court or counsel during the progress of the case, which cannot reasonably be attributed to the exercise of judicial consideration or discretion."

In Elliott v. Plattor, 43 Ohio St. 198, 1 N. E. 222, it appeared that a motion to confirm a sheriff's sale had been sustained by the court, and the sale confirmed, but by mistake the judge noted on the court docket that the motion had been denied, and this note misled the clerk so that he made a like entry on the court's journal.

Holding that this error could be corrected after the lapse of the term, the court said:

"It is claimed, however, that this was not a 'mistake, neglect, or omission, of the clerk, or irregularity in obtaining a judgment or order,' within the meaning of section 5354 Revised Statutes. In the first instance it was the mistake of the judge in making these notes on his minutes differing from the judgment the court had officially announced. The clerk, by following these minutes, instead of the judgment actually announced, adopted that mistake, and it became in fact and in law a mistake of the clerk as well as of the judge. It was a mistake made by both within the meaning of the statute. How the clerk was induced to enter a mistaken entry upon the journal is immaterial, if the entry was in fact a mistake."

In Erickson v. Stockton & T. C. R. Co., 148 Calif. 206, 82 Pac. 961, it was held that where a judgment contained a mere clerical error in computation, which appeared on the face of the record, the court had power on its own motion to correct it at any time without vacating the judgment and entering a new one.

The author of a most exhaustive note in 10 A. L. R. 526 at 603, supported by undoubted authority, states the rule very clearly thus:

"Any mere mathematical mistake or clerical error in computing the amount of a recovery, carried into a judgment or decree, when all the factors for calculating a correct result are present in the files and records of the court and the minutes and papers in the cause, is subject, when discovered, to correction by the court through a nunc pro tunc amendment."

See also supplementary note on the same subject and cases cited in 67 A. L. R. 828, 844.

We feel obliged to say that the form of accounting adopted by the executor in this estate is not at all desirable. It only tends to confuse what should be a comparatively simple matter, i. e., the computation of the executor's commissions and his attorneys' fees pursu-

ant to statute. The final account of a personal representative should show the items he is chargeable with at their inventory value as this may be corrected by reappraisement or actual sale of the several items or by evidence introduced before the court indicating their actual value, or by loss or destruction of property. To this should properly be added all accretions to the estate which have come into the possession of the executor, such as interest, profits on sales, etc. It is then an easy matter for the court to compute, under the statute, the amount of the estate "accounted for" by its officer.

Our conclusion is that the judgment of the district court of Converse County should be affirmed. However, by this judgment of affirmance we do not mean to be understood as abridging the right of the district court to correct mere errors in computation, which should in justice to all parties concerned be given the necessary attention. As we have already several times intimated, this may be done at any time upon motion, and counsel should have no difficulty in aiding the court to set such matters right. We can hardly indulge the presumption that they have forgotten their early lessons in arithmetic.

*Affirmed.*

BLUME, Ch. J., and KIMBALL, J., concur.