189 P.2d 90

**DAVENPORT v. SIMONS.**

No. 7373.

Supreme Court of Idaho.

Dec. 13, 1947.

Rehearing Denied Feb. 11, 1948.

Robert E. Brown, of Kellogg, and James A. Wayne, of Wallace, for appellant.

66 Idaho 400, 160 P.2d 464. Further proceedings were had in the probate court, from which an appeal was taken to the district court, and from said district court to this court.

The notice of appeal recites, inter alia, that the appeal to the supreme court is from the judgment and decree entered by the district court November 27, 1946, and from the whole of said judgment, upon questions of both law and fact.

Respondent having made settlement with all heirs, legatees and devisees in and to the property involved in this action, there is no issue raised as to the right of respondent to have the entire estate distributed to her.

April 29, 1942, Henry S. Davenport died testate in Shoshone County; May 25, 1942, W. T. Simons was duly appointed executor of his estate, and June 10, 1942, filed an inventory and appraisement of the estate. In the inventory property of the value of $34,-751.39 was accounted for, of which the appraisers found only $3,050 was separate property of decedent, and the balance of $31,701.39 was the community property of decedent and his wife, the respondent. However, upon his final accounting the executor accounted for $40,597.03, and by his supplement to the final account for an additional sum which brought the grand total to $42,205.10. On this sum, the total amount accounted for by the executor, the commissions of the executor and the fees of his attorney were calculated and paid.

BUDGE, Chief Justice.

This case was here upon a former appeal and may be referred to for information as to the facts. Simons v. Davenport,

The attorney was also allowed fees for extraordinary services for the alleged collection of merchandising accounts in the further sum of $792.16. Objection was made in the probate court to the allowance of the executor's commissions and the fees of his attorney calculated upon the grand total value of the estate, namely $42,205.10, and fees allowed the attorney for extraordinary services, but said fees were allowed.

This brings us to the first and second assignments of error which present the questions of whether or not the commissions of the executor and the fees of his attorney should be calculated and paid upon the entire community estate plus the separate estate of decedent, or only upon the one-half interest of the decedent plus his separate estate; also, whether or not the attorney for the executor was entitled to an allowance for extraordinary services in the amount heretofore stated.

Section 15-1107, I.C.A., as amended by Sess.Laws, 1935, chap. 44, p. 82, provides: "When no compensation is provided by the will, or the executor renounces all claim thereto, he must be allowed commissions upon the amount of the estate *accounted for* by him, * * *" (Emphasis added).

■ Section 15-1139, I.C.A., as amended by Sess.Laws, 1935, chap. 52, p. 99, fixes the maximum amount of attorney's fees to be charged for all services rendered to executors or administrators in the probating of estates. The probate court has jurisdiction over and administers the entire community estate upon the death of either spouse, and the settlement of the entire community estate for the purpose of satisfying community debts.

Section 14-113, I.C.A., provides, in part, as follows:

"Upon the death of either husband or wife, one-half of all the community property shall go to the survivor, subject to the community debts, and the other half shall be subject to the testamentary disposition of the deceased husband or wife, * * *."

Construing the section last above quoted in Swinehart v. Turner, 44 Idaho 461, at page 467, 259 P. 3, this court held:

"On the death of either spouse, the community property being liable for the community debts, the administration of the estate draws to it the liquidation and settlement of the entire community estate for the purpose of satisfying the community debts, which makes it necessary for the probate court to assume jurisdiction over and administer both moieties of the community fund."

In Bancroft's Probate Practice, Vol. 2, sec. 432, p. 808, the following language is found:

"The result is that in California attorneys' fees for 'conducting the ordinary probate proceedings,' are now computed solely on the amount of the estate accounted for by the executor or administrator,

and all discretion of the court in the matter is apparently excluded."

█ In Re Estate of Pringle, 51 Wyo. 352, 67 P.2d 204, 206, 110 A.L.R. 987, at pages 990, 991, it is said:

"In United States v. Rehwald, D.C., 44 F.2d 663, the court, in defining the words 'account for,' said: 'The term "account for" has been in various state adjudications interpreted to mean paying over the money to the person entitled thereto.'"

And makes the further observation:

"We are of the opinion that the amount of the compensation should be fixed upon the value of the estate at the time of the settlement, the appraised valuation being disputed."

In other words, the estate accounted for is not controlled by the appraised value or inventory. The executor or administrator, under the statute, must account for the entire community estate. The probate court has jurisdiction to administer the entire community estate for the purposes enumerated in the statute. Therefore, it would seem to follow that the executor and his attorney in the instant case were legally entitled to compensation as fixed by statute computed upon the entire community estate accounted for, as herein defined, plus the separate estate of the deceased, and not upon the half of the community property belonging to the deceased spouse, plus his separate estate.

In connection with the question above discussed, was the attorney for the executor improperly allowed $792.16 for the alleged collection of merchandising accounts outstanding and owing to decedent at the time of his death?

Section 15-802, I.C.A., provides:

"The executor or administrator must take into possession all the estate of the decedent, real and personal, and collect all debts due to the decedent or to the estate. * * *"

Sess.Laws, 1935, chap. 52, sec. 1, p. 99, amending sec. 15-1139, I.C.A., provides:

"In all cases such further allowance may be made as the Probate Judge may deem just and reasonable, for any extraordinary services."

██ It was the duty of the executor to collect all debts due to the decedent or to the estate for which services the statute fixes his compensation. There is no evidence in the record as to what, if any, extraordinary services were rendered by his attorney. No suits were brought for or against the estate; no evidence of extraordinary services of any kind were submitted to the probate judge upon which to base such a claim. Section 15-1139, I.C.A., as amended, supra, fixes the maximum amount of attorneys' fees, and includes all charges for all services rendered the executor in probating the estate in the absence of extraordinary services. No extraordinary services having been established, the

allowance to the attorney of the amount above indicated was without justification and void. The attorney could not, under the statutes as we construe them, receive the maximum amount of attorney's fees allowed, together with further compensation for performing the duties of the executor. The order fixing the attorney's fees for extraordinary services was an ex parte order, without notice to the parties in interest, therefore void. In re White's Estate, 175 Okl. 439, 52 P.2d 1074, 1076.

The action of the district court in disallowing $792.16 for alleged extraordinary services to the attorney must be sustained.

Coming now to the third assignment of error, which is, that the court erred in finding and holding that the sale by the executor of respondent's one-half interest in certain securities was unauthorized, illegal, null and void.

The court found and decreed that the securities belonged to said decedent and his surviving widow as their community property, and that Jessie M. Davenport was the owner of an undivided one-half interest in each and all of said securities and, further, that the pretended sale by the executor of respondent's one-half interest in said securities was unauthorized, and that there was no necessity or any other justification for selling, or attempting to sell, respondent's share and interest in said securities; that said sale was not necessary to pay taxes, debts, claims, allowances, costs, or administration expenses in connection with the estate of said deceased, or debts of the community consisting of the decedent and respondent, and that said purported sale of the one-half interest of respondent was illegal, null and void. That respondent was entitled to have her one-half share of said securities accounted for by the executor and returned to her, together with all dividends and earnings thereon accruing from the date the executor took possession of said securities. The decree entered by the district court followed, substantially in terms, the findings of fact that any sale, or attempted sale by the executor of respondent's one-half interest in said securities is null and void.

From the record it appears that October 28, 1942, the executor purported to sell a large number of securities concededly community property of respondent and her husband in which she had a present vested interest. It is contended by respondent that the purported sale of these securities was unnecessary to pay community debts or other legal charges against the estate. The record also shows that June 30, 1942, the executor filed his first petition for payment of claims against the estate, and on that date reported he had on hand $4,167.85 in cash. The auditor's account in evidence discloses that October 28, 1942, the executor had received $8,719.74 in cash, which figures do not include the amount the executor purportedly received from the sale of the securities, and further shows that after the payment of claims authorized by

order dated June 30, 1942, the executor still had on hand $5,290.15, and that the executor received between October 28, 1942 and December 22, 1942, an additional $665.-44; that after payment of all claims filed against the estate including property tax, inheritance tax, funeral costs, expenses of last illness, attorney's fees and executor's commissions, he still had on hand $1,472.81. Notwithstanding the fact that, after the payment of all claims, the executor had on hand $1,472.81, he purported to sell all of the securities, justifying his authority under the provisions of a will made by decedent August 4, 1928, and the provisions of secs. 15-703 and 15-707, I.C.A.

Section 15-703, supra, provides:

"At any time after receiving letters, the executor * * * may sell perishable and other personal property likely to depreciate in value, or which will incur loss or expense by being kept, *and so much other personal property as may be necessary to pay the allowance made to the family of the decedent.* The executor * * * is responsible for the property, unless, after making a sworn return, and on a proper showing, the court shall approve the sale." (Emphasis added)

Section 15-707, supra, fixes the manner of sale.

It will be remembered that when the executor purported to sell the securities there were no unpaid claims against the estate, and he had on hand $1,472.81, therefore under sec. 15-704, I.C.A.:

"If claims against the estate have been allowed, *and a sale of property is necessary for their payment,* or for the expenses of administration, or for the payment of legacies, the executor or administrator may sell all or so much of the personal property as may be necessary therefor. He may also make a sale from time to time, so long as any personal property remains in his hands, *and sale thereof is necessary,* * * *" (emphasis added) no sale of property was necessary for the payment of claims against the estate, or for expenses of administration.

Said section further provides:

"If it appears for the best interests of the estate, he may, at any time after filing the inventory, in like manner sell the whole or any part of the personal property belonging to the estate, whether necessary to pay debts or not. Such sale to take effect only upon confirmation by the court."

It would seem illogical to hold that it would be for the best interests of the estate that the executor be authorized, under the latter part of said section above quoted, to sell respondent's one-half interest in the securities when there were no community debts and no necessity for the payment of any claims against the estate.

Appellant strenuously contends he was authorized to sell the securities under the provisions contained in decedent's will, the material part of which is as follows:

"I direct that my executors and trustee or trustees in dealing with the said property so left in trust with them or in the handling of any of the affairs of my said estate or the administering thereon, that the proper authorities shall have the power to convert real property into personal property and personal property into real property and all kinds of property into money and to invest and re-invest the same as shall be deemed wise by said persons or parties handling the affairs of my said estate and for the best interests of my said estate."

█ Conceding that under sec. 14-113, I.C.A., that deceased's one-half interest in the community property was subject to testamentary disposition and that the executor, under the will, was authorized to sell said one-half interest, together with decedent's separate property, it does not follow that he had authority to sell the one-half interest of the surviving spouse in the community property, which she owned in her own right prior to the death of her husband. In re Gilmore's Estate, 81 Cal. 240, 22 P. 655. On this particular question we call attention to de Funiak on Principles of Community Property, Vol. 1, sec. 109, p. 311.

█ In construing sec. 14-113, I.C.A., the principle has been recognized that the husband and wife are equal owners in the community estate, and it authorizes each to dispose of his or her half by will; that the community estate is subject only to the payment of the community debts. The surviving spouse takes his or her half of the community property not by succession, descent, or inheritance, but as a survivor of the marital community. The interest of the wife in the community property is a vested interest, and as to degree, quality, nature and extent is the same as that of her husband. Kohny v. Dunbar, 21 Idaho, 258, 121 P. 544, 39 L.R.A.,N.S., 1107, Ann. Cas.1913D, 492; Ewald v. Hufton, 31 Idaho 373, 173 P. 247; Peterson v. Peterson, 35 Idaho 470, 207 P. 425.

The principle established in the case of Sharp v. Loupe, 120 Cal. 89, 52 P. 134, to the effect that power to sell conferred by will upon an executor, while it authorizes him to convey a good title to the purchaser where he sells for the purpose of paying debts of the decedent, does not authorize him to convey a good title to more than one-half of the community property where he makes a sale for other than the payment of debts. That seems to be the recognized law. In California the surviving widow takes as an heir, this is not true in Idaho. Since the husband's testamentary power does not authorize him to dispose of more than one-half of such property by will, he may not give his executor power to sell the entire community property in his discretion. On the other hand, since the entire community property is subject to the payment of the debts of the deceased, the executor may sell only for that purpose.

The proposition seems to be sound that the testator must be presumed to have known the law applicable to the disposition of property by will, and therefore to have known that he had no power to dispose by will of the wife's interest in the community property, but only of his own interest therein. He must also be presumed not to have intended to devise any property over which he had no power of testamentary disposition, and therefore the will should be read as applying only to his property within such power. In re Gilmore's Estate, supra.

The trial court did not err in finding and decreeing that the sale of respondent's one-half interest in said securities was not necessary to pay claims against the estate, neither did the court err in finding and decreeing that the sale of the one-half interest of the wife in the securities was illegal and void ab initio, therefore subject to attack herein. Kline v. Shoup, 38 Idaho 202, 218, 226 P. 729, and cases therein cited, Id., 38 Idaho 480, 220 P. 45; Harkness v. Utah Power & Light Co., 49 Idaho 756, 291 P. 1051; Smith v. Smith, 67 Idaho 349, 180 P.2d 853, 856, and cases cited.

Other errors not assigned demand no consideration.

The cause is remanded with instructions to the trial court to modify its findings of fact, conclusions of law, and decree in accordance with the views expressed here-in, and as so modified the decree is affirmed. Costs to respondent.

GIVENS, HOLDEN, and MILLER, JJ., and SUTTON, District Judge, concur.