544 P.2d 294

The TRAVELERS INSURANCE COMPANY,
Plaintiff-Respondent,

v.

Viola Lydia JOHNSON, Defendant, Cross-Complainant, Cross-Defend-ant-Appellant,

v.

Cora HATCH, Defendant, Cross-Defendant, Cross-Complainant and Respondent.

No. 11797.

Supreme Court of Idaho.

Dec. 29, 1975.

Rehearing Denied Jan. 29, 1976.

J. D. Hancock, Smith & Hancock, Rexburg, for appellant.

Wesley F. Merrill, Merrill & Merrill, Pocatello, for respondent, Travelers Insurance.

Callis A. Caldwell, Johnson & Olson, Pocatello, for respondent, Cora Hatch.

SHEPARD, Justice.

This is an appeal from a judgment which apportioned the proceeds of a group term life insurance policy between the widow of the decedent-insured and the named beneficiary of the policy, who was a former wife of decedent. Proceeds were divided on the basis of the time each had an insurable interest in the life of the decedent. We reverse and remand.

Elmer Hatch, the decedent, and Viola Hatch (now Johnson) were married for 11 years and 3 children were born of that marriage. They were divorced in 1957 with Viola being awarded custody of the three children, each of which has now reached majority. On March 18, 1961, Elmer Hatch applied for and received a group term life insurance policy as an inci-

dent of his employment with the Union Pacific Railroad. At that time he was single and named his former wife, Viola Hatch, as beneficiary of the policy. On December 30, 1961, Elmer Hatch married Cora Ashbacker and one child has been born of that marriage. On July 23, 1962, Viola Hatch married Martin A. Johnson and on June 3, 1964, Johnson adopted the three children born of the marriage of Viola and Elmer Hatch. Elmer Hatch died on June 25, 1972 never having changed the initial designation of his first wife as named beneficiary of the insurance policy.

Although the insurance premiums were paid by Union Pacific as a fringe benefit of Elmer Hatch's employment with the Union Pacific Railroad, nevertheless, it was stipulated between the parties that from December 30, 1961 (the marriage of Elmer Hatch and Cora Ashbacker) until the death of Elmer Hatch on June 25, 1972, the premiums for the insurance coverage were paid from the community assets of Elmer Hatch and Cora Ashbacker Hatch. Cf. *Givens v. Girard Life Ins. Co. of America*, 480 S.W. 2d 421 (Tex.Civ.App.1972); *Stephen v. Gallion*, 5 Wash.App. 747, 491 P.2d 238 (1971). It was further stipulated that if called to testify, Cora Ashbacker Hatch would have testified that she was aware of the insurance policy but that she was under the impression that she was the beneficiary of the policy and that she did not consciously consent to the use of community assets for the payment of such insurance premiums when she was not the beneficiary of the policy.

Upon the death of Elmer Hatch both Johnson (his ex-wife, the named beneficiary) and Hatch (his widow) filed claims for the $10,000 proceeds of the policy. Travelers, the insurer, did not pay either party but rather filed this action in interpleader pursuant to I.C. § 5–321 and I.R. C.P. 22, joining both Johnson and Hatch as defendants. Johnson answered and cross-complained for the proceeds of the policy. Hatch answered and cross-complained asking for the proceeds of the insurance

policy or in the alternative that she receive one-half of the proceeds of the policy from either the insurer or from Johnson. Travelers deposited the $10,000 with the court and, upon motion, was discharged from the case and also awarded its attorney's fees and costs to be paid from the $10,000 deposit.

The trial court on essentially uncontroverted and stipulated facts entered its memorandum decision and judgment on the basis of the "insurable interest" which Viola Johnson and Cora Hatch had in Elmer Hatch's life. It held that Johnson, as the mother of Elmer Hatch's children, had an insurable interest until June 30, 1964, when those children were adopted by her then husband Johnson. Following that date, the court held no insurable interest to exist in Johnson but rather to exist in his wife Cora until the time of death. The court, therefore, after deducting the $432.50 awarded to Travelers, prorated the policy amount to the parties on the basis of time each had an insurable interest in the life of Elmer Htach, awarding Johnson $2,713.-20 and Hatch $6,854.40. This appeal by Johnson (the ex-wife) is taken from that judgment.

The facts herein are not controverted and the only issues presented are the legal and policy questions which flow from these facts. What interest, if any, has a community acquired in a term life insurance policy by virtue of the fact that the premiums are paid from community assets? May one spouse make a "gift" of community property assets without the knowledge and/or consent of the other spouse? If such a "gift" may be made by means of a life insurance policy, is that policy void or voidable by the other spouse following the death of the donor and if void or voidable, to what extent?

We note at the outset that neither Johnson nor Hatch argue in favor of upholding the decision of the trial court on its theory of "insurable interest." No authority is cited in support of that theory of the trial court and inferentially at least each of the

parties concede error in so dividing and apportioning the proceeds of the policy. Appellant Johnson principally argues that because the insurance policy was acquired while decedent was a single man, it originally had and maintained the status of separate property notwithstanding the later marriage of the decedent and the utilization of community assets thereafter to pay the premiums. Appellant further argues that at best the widow Hatch is entitled to recovery of only one-half of the amount of the *premiums* paid following her marriage to the decedent. Respondent on the other hand argues that since the *premiums* were paid with community assets, the *policy* and the *benefits* payable thereunder were community property. She asserts that notwithstanding the decedent's status as manager of the community property he could not make a gift of substantial community assets without the knowledge and consent of the spouse and that any other rule will invite fraud upon a wife. In the alternative respondent argues that she is entitled to at least one-half of the proceeds of the policy.

The policy implications of this case present problems of great conceptual difficulty. A life insurance policy is most usually a contract between an insurer and an insured that upon the payment of premiums and the occurring of the death of the insured a certain sum will be paid to a designated beneficiary. By and large there has been permitted great freedom in entering such contracts and in naming the beneficiaries of the proceeds. However, when the premiums for a policy insuring one spouse are paid from community assets and the policy designates a non-spousal beneficiary, the question arises as to whether the disposition of the proceeds should be in accordance with the law of community property or with the terms of the policy. This question has received considerable scholarly attention in community property states with differing results. See: Schwartz, Gifts of Community Property: Need for Wife's Consent, 11 U.C.L.A.L.Rev. 26 (1963); Huie, Community Property Laws

as Applied to Life Insurance, 17 Tex.L. Rev., 121 (1939), 18 Tex.L.Rev. 121 (1940); Hokanson, Life Insurance Proceeds as Community Property, 13 Wash.L. Rev. 321 (1938); Luccock, Life Insurance as Community Property, 16 Wash.L.Rev. 187 (1941). See also, cases collected at 114 ALR 545; 168 ALR 342; deFuniack and Vaughan, Principles of Community Property, § 123 (2nd ed. 1971).

Two dominant concerns arise; first, the protection of the surviving spouse from dissipation of the community property through the vehicle of insurance and second, permitting a married person to some extent protect the natural objects of his affection from disaster through the death of one upon whom they might be dependent. The resolution of this problem in favor of either of these conflicting interests necessarily presents harsh consequences for the unprotected party.

The resolution proposed by the appellant leads to the conclusion that the source of the first premium payment defines the character of the contract. Convenient as this proposition may appear it all but avoids the central policy considerations and leaves unanswered the question of what interest results from the use of community assets to pay the premiums.

Respondent's position is likewise not determinative of other questions which can arise. Simply stated she would have us hold that there exists a "vested" right of some kind in the proceeds of a life insurance policy when such policy has been purchased with community funds. However, there is a logical gap in concluding that a vested interest arises prior to the contingency of death which is the fundamental basis of the contract. If that be true, what happens when, in the simplest of cases, the insured merely stops paying the premiums? Or, when the community is dissolved by divorce, can the non-insured spouse properly claim that the policy *proceeds,* as distinguished from cash or loan value, should be taken into consideration in making a division of property? More-

over, if the community has an interest in the policy and the non-insured spouse predeceases the insured, should the law require that the proceeds of the policy be controlled by testamentary disposition?

In other community property jurisdictions there are wide differences of policy and conclusions on the questions presented by this case. In Louisiana, a husband may evidently insure his life in favor of some person other than his spouse, pay the premiums thereon from community assets and the surviving wife may not claim the proceeds of the policy as community property. *Pearce v. National Life & Accident Ins. Co.,* 12 La.App. 608, 125 So. 776 (1930); *Sherwood v. New York Life Ins. Co.,* 166 La. 829, 118 So. 35 (1928). At the other end of the spectrum is the state of Washington. There it is held that where life insurance premiums are paid from community property without knowledge or consent by the wife, a husband may not, absent consideration, name as beneficiary any person other than his spouse. Action to the contrary will result in his spouse gaining all of the policy proceeds upon the death of the insured. In *Occidental Life Ins. v. Powers,* 192 Wash. 475, 74 P.2d 27 (1937), such result was achieved regardless of the minimal amount of the policy as contrasted with the size of the insured's remaining estate and notwithstanding that the named beneficiary was the elderly and indigent mother of the insured whom the insured had supported for several years prior to his death.

A somewhat mid-view is taken by California where the rule seems to be that naming a third person as beneficiary when the policy premiums are paid with community property amounts to a gift of community property which the husband cannot make without the wife's consent and such gifts while not void are voidable as to one-half. The surviving spouse following the death of the insured is entitled to recover one-half of the proceeds of the policy as community property. *New York Life Ins. Co. v. Bank of Italy,* 60 Cal.App.

602, 214 P. 61 (1923); *Bazzell v. Endriss,* 41 Cal.App.2d 463, 107 P.2d 49 (1940); *Martinez v. Hudson,* 14 Cal.App.2d 42, 57 P.2d 970 (1936).

The rule in Texas is still somewhat different. It permits a husband to insure his life, pay premiums with community funds and designate natural objects of his affection, such as parents or children, as beneficiaries. If the community funds so expended for premiums are not unreasonably out of proportion to other community assets remaining, the surviving spouse has no recourse. However, if the conduct of the insured husband indicates a design to defraud the wife, she may recover the proceeds of the policy. *Givens v. Girard Life Ins. Co. of America,* 480 S.W.2d 421 (Tex.Civ.App.1972); *Murphy v. Metropolitan Life Ins. Co.,* 498 S.W.2d 278 (Tex. Civ.App.1973). See also *Gristy v. Hudgens,* 23 Ariz. 339, 203 P. 569 (1922).

We are not completely without precedent in Idaho. *Gem State Mutual Life Assn. v. Gray,* 77 Idaho 157, 290 P.2d 217 (1955), posed substantially the same questions but their resolution was not necessary and that case was decided on a collateral issue. See Brockelbank, The Community Property Law of Idaho (1st ed. 1962); Schimke, 16 Proceedings of the Idaho State Bar, 101 (1940).

However, *Anderson v. Idaho Mutual Benefit Assn.,* 77 Idaho 373, 292 P.2d 760 (1956), is a case closely in point to the one at bar. In *Anderson,* a wife was insured under a life insurance policy naming her husband as beneficiary. The beneficiary was later changed to her daughter by a previous marriage. Upon death of the wife, the policy proceeds were paid to the husband. The named beneficiary, Anderson, brought suit against the insurance carrier and the carrier sought to bring in the husband as an additional defendant. The carrier argued that all of the premiums in the policy were paid from community assets of the husband and wife and the husband was therefore entitled to the proceeds of the policy which had already been paid to him.

The lower court denied the motion to bring in the husband and excluded all evidence sought to be tendered by the insurance carrier on its theory that the policy and the proceeds were community property. After a somewhat exhaustive analysis of the law in other jurisdictions we reversed for joinder of the husband. In so doing, we stated:

"It is the general rule in community property jurisdictions that a life insurance policy, insuring the life of either spouse, acquired after marriage and upon which the premiums are paid with community funds, is community property. * * * Where there is no consideration and the change of the beneficiary is purely a gratuity, it is regarded as a gift of community property and, if substantial in amount and done without the wife's consent, it is voidable by her. * * * Our conclusion is that the change of beneficiary by insured was an attempt to make a gift of the proceeds of the policy to the new beneficiary. If the premiums were paid with community funds the proceeds would be community property and the insured could not make such a gift without the consent of her husband, and if she did so without his consent, the gift is now, after her death, voidable by him as to his half interest therein." at 377–380, 292 P.2d at 762.

Although there are factual differences between this case and *Anderson,* we are of the opinion that the legal doctrines enunciated there embrace the facts at bar. We, therefore, adopt the principles set forth in *Anderson* with the following caveats and restrictions.

■ Since the policy in the case at bar is a term life insurance policy, we need not determine if a property interest in that policy "vested" at the time of issuance or at the time when premiums were paid from community funds. As a term policy it had no value except in the event of the death of the insured. *Gaethje v. Gaethje,* 8 Ariz.App. 47, 442 P.2d 870 (1968). It is enough to hold that at the death of the insured a community property interest in the proceeds became vested in the surviving spouse.

■ We hold only that when an insurance policy is issued on the life of a married person without the knowledge or consent of the other spouse and (1) someone other than the insured's spouse is the named beneficiary; and (2) no consideration passes between the insured and the named beneficiary; and (3) the premiums are paid with community assets; and (4) the insured dies; a community property interest exists as to one-half of the proceeds of the policy.

■ We emphasize that our conclusion herein respecting the ability of a spouse to make a gift of one-half of the proceeds of a life insurance policy is restricted solely to the area of life insurance. A sweeping determination of gift ability beyond the area of life insurance might do violence to the concept of community property and the need of one spouse to be protected against acts designed to deprive him or her of their share of the community property. It is established that one spouse at death may effectively dispose of his or her share of the community property to persons other than the surviving spouse. I.C. §§ 15–2–102, 15–3–101; *Kohny v. Dunbar,* 21 Idaho 258, 121 P. 544 (1912); *Davenport v. Simons,* 68 Idaho 21, 189 P. 2d 90 (1947). Such is undoubtedly based on the rationale that since the community is dissolved each spouse is entitled to have or dispose of their half of community assets. The payment of life insurance proceeds is triggered by the same contingency, death. Proceeds only come into being upon the dissolution of the community and we see no policy to be served in prohibiting a spouse from giving away an amount which can be no more than half of property accumulated during marriage through the medium of life insurance when we permit him to do so through the law of descent and distribution.

Accordingly, we reverse and remand this case for distribution of the proceeds con-

sistent with the above opinion, subject to an award of reasonable attorneys' fees and costs to the respondent insurer.

All parties to bear their own costs on appeal.

McQUADE, C. J., and McFADDEN and DONALDSON, JJ., concur.

BAKES, J., concurs in result.