712 P.2d 611

**Kenneth ELLIS, dba Valley Trout Farms, Inc., Plaintiff-Appellant,**

v.

**TWIN FALLS CANAL COMPANY, Defendant-Respondent.**

**No. 15820.**

Supreme Court of Idaho.

Dec. 20, 1985.

Stephen W. Beane, Boise, for plaintiff-appellant.

Gary D. Slette, Nelson, Rosholt, Robertson, Tolman & Tucker, Twin Falls, for defendant-respondent.

SHEPARD, Justice.

Some seven and one-half years ago, in May 1978, defendant-respondent's canal bank allegedly collapsed, damaging plaintiff-appellant's fish farm and stock.  The

---

complaint was filed in October of 1978. In October 1984 the action was dismissed. During that time interval the following proceedings took place. The complaint was served in May 1979, and defendant answered seven days later. In March 1980, defendant filed interrogatories addressed to Ellis. In July 1981, Ellis received a clerk's notice of dismissal of the action and an affidavit was filed as to why the case should be retained. The trial was scheduled for November 1981, but vacated upon stipulation. Trial was reset in March 1982, but vacated upon stipulation since Ellis had filed a petition under Chapter 11 of the Bankruptcy Act. In July, following notice thereof, the action was dismissed and Ellis' motion to set aside that order of dismissal was granted in September 1983. On June 1, 1984, following a telephone status conference, the district judge set a date in November for a pretrial conference and a date. approximately two weeks later for trial setting. It was ordered therein that all discovery be completed by the date of the pretrial conference, that proposed exhibits and witness lists be exchanged at least a week in advance of the pretrial conference, and that a pretrial memorandum as specified in Rule 16(a) be submitted at least one day in advance of the pretrial conference. Ellis had never filed answers to the interrogatories of March 1980, and Twin Falls Canal moved to compel answers to those interrogatories, and on October 28, 1984, moved to dismiss the action for failure to prosecute, or in the alternative to vacate the trial date. On October 30, 1984, the court heard Twin Falls Canal's motion to compel answers to interrogatories. On that date answers to interrogatories were delivered by Ellis. Twin Falls Canal's motion to dismiss was argued that same date, and at the conclusion thereof the action was dismissed.

Ellis first argues that the motion to dismiss was erroneously granted since that motion was not served upon Ellis at least five days in advance of the hearing in compliance with I.R.C.P. 6(d). We do not agree.

The record reflects that counsel for Ellis was present at the hearing and participated in the argument upon the motion to dismiss. Although he noted therein that he had not received the five-day notice of the hearing, he made no assertion of being prejudiced thereby and did not move for a continuance of the hearing date. "The voluntary appearance by an attorney and his participation in the argument of a motion is a waiver of notice of the motion." *B.J. Carney & Co. v. Murphy*, 68 Idaho 376, 381, 195 P.2d 339, 341 (1948). *See also Curtis v. Walling*, 2 Idaho 416, 18 Pac. 54 (1888).

The Court in *Warden v. Lathan*, 96 Idaho 34, 35, 524 P.2d 162, 163 (1974), stated:

"It is well settled in this jurisdiction that the trial court has the authority to dismiss a case because of a failure to prosecute, and that the trial court's exercise of such authority will not be disturbed on appeal unless it is shown that there was a manifest abuse of discretion. (Citations omitted).

"We are mindful that all of the delay in this case might not be attributable solely to appellants. However, '... a plaintiff who hails a defendant into court assumes, and so long as he has the affirmative of the main issue, retains the duty of diligent prosecution.' "

*See also Kirkham v. 4.60 Acres*, 100 Idaho 781, 605 P.2d 959 (1980); I.R.C.P. 41(b).

Ellis argues that the automatic stay provisions of 11 U.S.C. § 362 provide an excuse for the failure of Ellis to advance the case. We disagree. In the instant case the action was not against Ellis as a debtor, and hence the automatic stay provisions do not apply. *Meyer v. Fleming*, 327 U.S. 161, 66 S.Ct. 382, 90 L.Ed. 595 (1946); 11 U.S.C. § 323(b).

Ellis asserts that involuntary dismissal under I.R.C.P. 41(b) is an extreme sanction, that other sanctions were available which were less punitive, and hence it was an abuse of discretion by the trial court. We disagree. The Court, in *Jensen v. Doherty*, 101 Idaho 910, 911, 623 P.2d 1287, 1288 (1981), stated:

"Involuntary dismissal under I.R.C.P. 41(b) for failure to prosecute is in the nature of a sanction. It is a necessary final recourse available to the Court to protect its processes and other litigants from abuse. It is a remedy to be sparingly used, but it is always available. (Citations omitted).

"We have held that the granting of an involuntary dismissal on this ground is an act within the sound discretion of the trial court, and that imposition of the sanction will stand absent abuse of that discretion."

We are not pointed by Ellis to any clear abuse of discretion of the trial court in the instant case. At the time of the dismissal the action had been pending for six years, and up to the date of the dismissal Ellis had failed to diligently prosecute the case, to initiate any discovery, or to comply with the discovery efforts of Twin Falls Canal. We note that present counsel for Ellis did not appear in the case until mid–1984. The time lapses and Ellis' failure to prosecute in the instant case are beyond those in cases in which this Court has affirmed dismissals by the trial court. *See Jensen v. Doherty, supra; Kirkham v. 4.60 Acres, supra; Beckman v. Beckman,* 88 Idaho 522, 401 P.2d 810 (1965); *Hansen v. Firebaugh,* 87 Idaho 202, 392 P.2d 202 (1964).

I.R.C.P. 41(b) is identical to F.R.C.P. 41(b) and cases decided under the federal rule indicate that unreasonable delay creates a presumption of prejudice to the defendant's case. *Moore v. Telfon Communications Corp.,* 589 F.2d 959 (9th Cir. 1978); *Alexander v. Pacific Maritime Association,* 434 F.2d 281 (9th Cir.1970), *cert. denied,* 401 U.S. 1009, 91 S.Ct. 1254, 28 L.Ed.2d 545; *States Steamship Company v. Phillippine Air Lines,* 426 F.2d 803 (9th Cir.1970).

We find no abuse of discretion in the trial court's order dismissing the action with prejudice.

Affirmed. Costs to respondent.

DONALDSON, C.J., and BAKES and HUNTLEY, JJ., concur.

BISTLINE, Justice, concurring in part and dissenting in part.

On January 1, 1984, the Honorable Theron W. Ward retired from a long term of service as a judge of the Fifth Judicial District. He was in office when Kenneth Ellis, plaintiff in this action, retained counsel and commenced this action against the canal company in September of 1978 seeking damages for the May 1978 flooding of his property allegedly caused by the negligence of the canal company. Apparently there had been discussion between the parties which had produced no results, as noted by the fact that the canal company appeared voluntarily through counsel. All counsel then involved were local to the Fifth District Bar. Judge Ward presided in all proceedings in the case until his retirement.

The last proceeding which Judge Ward presided over prior to his retirement was the plaintiff's motion to set aside a court clerk's default order dismissing the action which had been entered in July of 1983. On receiving notice of that dismissal the plaintiff responded with a motion to set it aside:

COMES NOW Robert C. Weaver, attorney for the above named plaintiff, and moves this Court for an order setting aside the order of dismissal of the above captioned action entered on July 11, 1983. This motion is based upon the fact that the above named plaintiff, Valley Trout Farms, Inc., has filed a Chapter 11 petition in the United States Bankruptcy Court for the District of Idaho and the plaintiff's claims in this case are an asset of the bankruptcy estate.

This motion is further based upon the fact that James C. Tucker, attorney for the defendant, had previously agreed to stipulate that this action would not be dismissed, but that no written stipulation was submitted to the Court prior to the entry of an order of dismissal. R., Vol. 2, pp. 31–32.

The motion was supported by an affidavit of counsel which stated:

COMES NOW ROBERT C. WEAVER, first being duly sworn upon oath, deposes and says as follows:

(1) I am the attorney for the above named plaintiff, and have personal knowledge of the facts stated herein.

(2) By reason of the plaintiff's Chapter 11 petition and proceedings thereon, the trial setting on this case has been continued a number of times.

(3) Upon receiving notice that the case would be dismissed, I contacted James C. Tucker, attorney for the above named defendants, and he agreed to stipulate that the case would not be dismissed, but now written stipulation was filed with the Court prior to the Court's order of July 11, 1983, dismissing the case. R., Vol. 2, pp. 33–34.

Looking backward into the clerk's record, in July of 1981 plaintiff's counsel filed and served a Note of Issue stating that a two-day trial was anticipated, no jury had been requested, and that a pretrial conference would not be necessary. A trial was scheduled for March 17, 1982. Five weeks before trial, on February 10, 1982, *defendant* —not the plaintiff—filed a motion to vacate trial setting:

COMES NOW, Defendant Twin Falls Canal Company and moves the Court to vacate the trial heretofore scheduled for March 17, 1982, on the following ground:

1. Valley Trout Farms, Inc., has filed a petition under chapter 11 of the Bankruptcy Act, for a corporate reorganization, as shown by Exhibit "A" attached hereto and made a part hereof.

2. Chapter 11 of the Bankruptcy Act contemplates the submission of a plan of reorganization to the Court and the creditors for approval. 11 U.S.C., Section 1123 provides for the contents of a plan. Subparagraph (b) of Section 1123 states that a plan may provide for the settlement or adjustment of any claim or interest belonging to the debtor or to the estate; or the retention and enforcement by the debtor, by the trustee or by a representative of the estate appointed for such purpose, of any such claim or interest.

3. No such plan of reorganization has yet been filed with the Bankruptcy Court, and it is not now known whether a trustee will be appointed or some other disposition made of the claim embodied in the complaint in this case and the Defendant may be exposed to dual liability if the case proceeds to trial without Valley Trout Farms, Inc., first having presented the matter to the Bankruptcy Court for consideration and inclusion in an approved plan.

4. At the very least, the bankruptcy estate is or may be an indispensible party to the litigation, which remains to be seen if a trustee is appointed.

5. Counsel for the respective parties have agreed to vacate the current trial date in view of the above. An appropriate stipulation will be filed with the Court. R., Vol. 2, pp. 26–27.

And, as defendant's counsel represented to the court would happen, a stipulation was filed less than a week later. R., Vol. 2, p. 28. That Judge Ward approved the stipulation and granted the defendant's motion to vacate the trial setting which plaintiff had obtained is demonstrated by the court clerk's certificate of mailing copies of the stipulation to both parties. R., Vol. 2, p. 28. The stipulation provided:

COMES NOW counsel for the above referenced parties, and stipulate that the trial date presently set for the 17th and 18th day of March, 1982, may be vacated and reset at a subsequent time convenient for the parties and the Court. R., Vol. 2, p. 28.

Apparently, during the ensuing 18 months a time convenient to the parties and counsel had not materialized,[1] when the clerk, in the performance of what would be a wholly

---

1. Practitioners will readily understand that finding a time convenient for both is not always easy to find. Moreover, it runs in my mind that Judge Ward at or about the time in question was being bothered with an ailment, and may not have been readily available as is apparently being surmised by the majority.

ministerial duty, entered the dismissal—most likely done without conferring with the judge and without knowledge or recollection of the contents of the stipulation. There should have been no problem with the motion to vacate the clerk's dismissal. And, of course, there was none. The court minutes of September 2, 1983 reflect, with Judge Ward hearing the motion with his reporter present, that:

> The Plaintiff by Robert C. Weaver of the firm of Weaver & Dykas appeared in court, Defendants did not appear in person nor by counsel and Plaintiff's counsel notified the court that Steven K. Tolman had advised the plaintiff they would not argue the Motion to Set Aside Order of Dismissal; whereupon the court granted the Motion to Set Aside Order of Dismissal. R., Vol. 2, p. 35.

That was Judge Ward's last involvement in the case. At that time, assuming that *fault* has to be placed for delay, the situation was either a "push" or weighed in favor of plaintiff. It was plaintiff who had acquired a trial setting. Defendant was the moving party who had it vacated.

For my part, I see no indication of any fault attributable to either party. At the time of Judge Ward's exit from the scene, the slate was absolutely clean. My concern is with a majority of this Court who have ample time to reflect on the situation as it then existed. Contrariwise, Judge Hurlbutt on taking over the case was made aware, probably by this Court's administrative director, that the case was growing whiskers. Obviously to the $n^{th}$ degree, there had been no problem as to the case's antiquity while Judge Ward presided. Like myself, he was of an era that believed lawyers usually were able to agree when a case could and should be tried. Times change.

The court minutes of May 18, 1984, with Judge Hurlbutt presiding, state that:

> This was the time set by the court for a status conference and there being new counsel for the Plaintiff, Steve Bean, respective counsel will need a continuation of this conference and the same is set for Friday, June 1, 1984. R., Vol. 2, p. 36.

On May 21, 1984, Mr. Bean and former counsel for plaintiff signed and filed a Notice of Substitution of Counsel.

Generally I agree with the proposition that a district judge on taking office may decide for himself that, as with the change of command on a navy vessel, that whatever may have gone before notwithstanding, we will from this day forward proceed to go strictly by the rules and regulations of this bench (bridge). On prior occasions I have constantly advocated that the district courts should have far more local autonomy than they have enjoyed in recent years. Recently I have seen cause to mention that the district judges are the last remaining elected local judges in the entire state, and that historically the district judges of Idaho have been held in the highest esteem by the people of the districts wherein they are elected. It is not in spite of those beliefs that I write separately from today's majority—but because of them.

In my almost 40 years of exposure to our judicial system, I do not recollect of knowing, or knowing of, a district judge who would have come down as hard, and as precipitately, on a litigant as happened here, and the actions do not fit within my high esteem of the district judge. But I am not unaware that as a result of this Court's increasing excursion into the realm of administrative bureaucracy all of the "inferior" courts, even including our Court of Appeals, have been prodded into meeting *production* goals which are apparently set, or at least approved, by this Court. To some, statistics may seem to be a more important goal of the Court than well-reasoned precedential decisions.[2]

It seems clear to me that this Court today in affirming the district court does a disservice both to the litigant, to counsel,

---

2. My own philosophy has been and continues to be that the local autonomy of the district judges should be foremost. They are elected constitutional judges and it is more appropriate that their performance be a concern for those who elect them.

and to the district courts and judges thereof as well.

As the majority states, involuntary dismissal under I.R.C.P. 41(b) for failure to prosecute is a "final recourse," and one "to be sparingly used." *Jensen, supra,* 101 Idaho at 911, 623 P.2d at 1288. Here, to the obvious surprise of both parties, and most likely to the fifth district trial bar, the district court rendered the dismissal without forewarning or thought of lesser sanction.

The circumstances attendant to the dismissal are best observed by a direct examination of the proceedings:

"COURTROOM OF THE DISTRICT COURT, TWIN FALLS COUNTY JUDICIAL BUILDING, Twin Falls, Idaho, Monday, October 30, 1984, 1:35 P.M.

    *     *     *     *     *     *

"THE COURT: The next matter coming before the court comes on File Number 30606, Kenneth Ellis, doing business as Valley Trout Farms, Inc., versus Twin Falls Canal Company. Mr. Tucker, Mr. Beane.

"MR. TUCKER: Yes, Your Honor.

"THE COURT: Counsel, actually we have this matter set for status conference —or, excuse me, pretrial conference. There has also been filed a motion for dismissal or, in the alternative, an order vacating the trial date. This matter has been set for trial to occur on November 19th. It has been set for a two-day court trial.

"The record should reflect that the plaintiff is here represented by Stephen Beane. The defendant is here represented by James C. Tucker.

"Mr. Tucker, this is your motion. I have reviewed it. But you have the floor. You may speak to it.

"MR. TUCKER: Yes. If the court please, I think also before the court is a motion to compel answers to interrogatories.

"THE COURT: That's true. I am sorry. I forgot to state that.

"MR. TUCKER: I might advise the court. Just a few moments ago Mr. Beane gave me answers to the interrogatories, both the interrogatories filed in August of this year and also interrogatories that were filed in this case in 1980 which were filed by Mr. Alexander when he was representing the Twin Falls Canal Company.

"THE COURT: That's right. And I did also receive copies of those as part of the file.

"MR. TUCKER: We do have—and I did file yesterday the motion to vacate the trial along with the memorandum for the pretrial conference. I don't know whether the court wants to consider that. I don't think Mr. Beane has any objection in considering that.

"THE COURT: I do want to consider it very much.

"MR. TUCKER: I got, if the court please—we did, as I advised, we did get answers to interrogatories here this morning. Unfortunately those answers to interrogatories do answer most of the questions that we had with respect to some of the data and documents that are to be used by the plaintiff in this case to prove his case in chief with respect to the damage question. Also, it lists several witnesses, some of which had been witnesses in other cases involving this same flood down Rock Creek Canyon; but also this lists witnesses that in fact have not been deposed before.

"We see the need in this case for several more depositions. There hadn't been actually—actually there has been no depositions in this case, if the court please. This case has been pending since 1978. We think it's the duty of the plaintiff to prosecute the case. It is certainly not the duty of the defendant to go forward.

"When the court set this matter for trial at the last status conference that we had, I advised the court that there was some preliminary discovery we thought had to be done. We did file our interrogatories in

August and, of course, received answers today.

"If this case is to go forward, Your Honor, we need additional time to complete discovery. But we think that the case has been pending for such a long period of time and has received really very little attention through the plaintiff in this case that there is a basis for the court just to dismiss the case at this point in time.

"As I say, though, if the court feels this case should go forward, then we would like to, as our motion says, have it set soon after the first of the year. We certainly will get the discovery done as quickly as we can.

"But we are concerned because of the length of time that this case has been pending. We are concerned with the fact that now we are getting information with respect to witnesses and documents that we should have had four, five years ago. And, again, it's been strictly because of the fact that the plaintiff has not pushed this case forward for some infinite period of time.

"That's essentially our argument on the motion to vacate or dismiss. I suppose that the motion with respect to the compelling answers to interrogatories is rather moot now except for the issue of expenses. We did have to file in this particular case a motion to get those answers. I don't know if the answers would have been forthcoming had we not filed.

"The rule, as I recall, speaks to the fact that if the court must enter an order compelling that the court shall consider the issue of costs and the attorney fees at a hearing. I think in this case it certainly—the court has the discretion to consider that issue in light of the fact that we did not get those answers until today.

"THE COURT: So, Mr. Tucker, you have been prejudiced, you say, both by the expense incurred by your client in continuing to have to defend this suit as well as the lapse of time and your—perhaps a prospective inability to properly defend because of that lapsed amount of time; is that correct?

"MR. TUCKER: Yes, Your Honor. I think this case has been pending for such a long period of time with really no prosecution on behalf of the plaintiff; and now getting information this late when we did have interrogatories pending since 1980, certainly, I think, has—we don't know until we take the depositions and try to ferret out information with, particularly with regard to the damages that he is alleging as to whether or not we can even find information that now goes back six years. But, nonetheless, I think there is a very real element and possibility that we have been prejudiced by the essentially failure to prosecute this action.

"THE COURT: Thank you, Mr. Tucker. Mr. Beane, on behalf of the defense.

"MR. BEANE: Yes, Your Honor. This morning at 10:00 o'clock as I was leaving my office I received this motion for the order of dismissal or for alternatively vacating the trial date. And the only response that I have to offer is we are late in giving answers to interrogatories. We are sorry that that has occurred. We were trying to give as complete answers as possible, and do that prior to the pretrial; and we needed access to another file which we only recently were able to obtain to do that. Obviously that did not come until today's date.

"As far as the length of time in which this case has been pending, this was stayed for a number of months, if not years, as a result of some agreement, I think, between former counsel, Mr. Weaver, and former counsel for the defendants. But I couldn't speak to that because I wasn't involved in the case at that time. And I don't know why this case sat as long as it did.

"I noticed in the file there were several stipulations filed among counsel to vacate trial dates as I understand it. But why that is, I don't know. My involvement has come in this case since May of 1984. The court made it very clear at that point in time that this was one of its older cases and wanted to proceed.

"We feel that we are ready to proceed. If the defendants feel they have been prejudiced by receiving our answers to interrogatories at this late date, we wouldn't seriously oppose a change in the trial date if they feel that will remedy it as a result of that.

"To dismiss this case, though, I think would be to overlook the fact that earlier there was some type of agreement to continue it; and I don't think the court has a basis for dismissing the case itself.

"THE COURT: Mr. Beane, you became involved in this case in May of 1984 as I understand it. We did hold a status conference on June 1st of this year. Both you and Mr. Tucker fully reported on the status of this case; and based on your representations to me, a pretrial was set for originally November 2nd. It's now set for today. And the trial was set for November 19th.

"Why has Mr. Ellis been so slow in answering these interrogatories and getting prepared for trial? I find that there is a pretrial memorandum here filed by the defendants in this action. I am unaware of your filing such a memorandum as is required by my order.

"MR. BEANE: I have one to file, Your Honor. But I just received their pretrial memorandum this morning at 10:00 o'clock this morning myself as I did this motion.

"THE COURT: Mr. Beane, those pretrial memoranda were ordered as a part of the order setting a pretrial conference and without reference to anything other than Rule 16 which requires essentially simultaneous filing of those. And they are for the benefit of this court; and at this juncture I am without that benefit. And I see little reason why this case should not be dismissed.

"Mr. Beane, why has this case languished like this? Why has Mr. Ellis been unresponsive not only to matters requested by the defendants, but those ordered by this court?

"MR. BEANE: Your Honor, I can file with the court at this time, realizing it's not pursuant to the rule—it's wanted the day before the pretrial—the pretrial memorandum that we prepared, if the court deems that appropriate.

"As to why Mr. Ellis has not answered these interrogatories in a more timely manner, I upon receipt of both of these interrogatories promptly gave them to him, asked him to answer them. He indicated to me that he needed to have for his review to properly answer them a file known as Robert Myers versus Twin Falls Canal Company.

"THE COURT: That's a court case?

"MR. BEANE: That was a case that was in District Court before involving the same flood that's the subject of this litigation.

"THE COURT: And that is a case that is a matter of public record?

"MR. BEANE: Yes, Your Honor.

"THE COURT: And did Mr. Ellis have any difficulty whatsoever coming into the office of the clerk between their normal hours of 9:00 and 5:00 o'clock and procuring that file?

"MR. BEANE: No. But the research notes of Mr. Myers' attorney, who now resides in Idaho Falls, and the background material including the depositions that we wanted to make reference to to answer the interrogatories were not available in the public court file.

"THE COURT: Anything further?

"MR. BEANE: We obtained that file last week and prepared these answers to these interrogatories. As far as the producing to the court the exhibits that we intend to utilize, the only justification we have for not presenting those is that these same documents have been requested in a federal antitrust suit in which Valley Trout Farms is involved; and over a quarter of a million documents have been in Salt Lake being reviewed by opposing counsel. And we have had difficulty, even though Mr. Ellis has made several trips down to Salt Lake, to retrieve those exhibits from the defendants' counsel in Salt Lake for the purpose of making them available to him.

I am afraid those are the only things we could represent to the court.

"THE COURT: Thank you, Mr. Beane. Counsel, this matter was, as Mr. Tucker pointed out, initiated by means of a formal complaint filed by Mr. Ellis in October of 1978. An answer was filed, then, by defendants in May of 1979. This matter has been set on various occasions and vacated for whatever reason. The record doesn't indicate precisely why. The record does reflect, however, that this case has previously been dismissed by the court for failure to prosecute. That was then set aside by the court on the affidavit of—motion and affidavit of prior counsel for the plaintiff. This court on its motion set a status conference in May. That status conference was ultimately held in June of this year.

"Counsel, I am—and I will cite the authority of *Robert and Colleen Bartlett v. Donald Peak*, [107 Idaho 284, 688 P.2d 1189 (1984) ], Supreme Court Case Number 14894, filed October 3rd, 1984. For good cause shown and prejudice that would inure to the defendants both in the costs of having to defend this suit and the prejudice which inures to the defendants as a result of this delay, I do and will hereby dismiss this case in its entirety.

"Mr. Ellis' inability to respond to orders of court are such that Mr. Ellis has absolutely forfeited his right to proceed any further with his claim in this court. Unless I am ordered to hear this case by the Supreme Court of this state, I will not open this file again.

"MR. BEANE: Dismissed with prejudice? Is that your ruling?

"THE COURT: Yes, sir, it most certainly is. Never to be refiled again except on order of the Supreme Court. If you need certification to take this up on appeal, I will be available at any time to sign it.

"MR. TUCKER: Thank you, Your Honor.

"THE COURT: Thank you, Mr. Tucker. Thank you, Mr. Beane. (Whereupon the proceedings in the above-entitled matter were adjourned)"

To permit the district court to take away the plaintiff's day in court for a minimal violation of its orders, and when no prejudice can be shown by either the one-day delay in producing the documents, or the length of pendency of the case, violates well-established judicial policy in this state. I.R.C.P. 1 provides: "These rules shall be liberally construed to secure the just, speedy and inexpensive determination of ever action and proceedings." Guided by Rule 1 this Court in the past has not been so quick to affirm outright dismissals based on nonprejudicial technical errors. Justice Bakes, authoring the Court's opinion in a case where the district court had dismissed an appeal for failure to file a cost bond, wrote:

It has long been judicial policy in Idaho that controversies be determined and disposed of each on its own particular facts and as substantial justice may require. *The exercise of judicial discretion should tend to bring about a judgment on the merits. Neal v. Harris*, 100 Idaho 348, 350–51, 597 P.2d 234, 236–7 (1979).

The language which he found appropriately used for reversing the dismissal was from *Bunn v. Bunn*, 99 Idaho 710, 587 P.2d 1245 (1978), where this Court reversed an equally esteemed district judge who had entered a dismissal for delay in paying fees due to a court reporter.

In *Bunn* our opinion stated, as pertinent here, that where a decision to dismiss (there an appeal) *has been soundly made with proper regard for all attendant circumstances this Court will not interfere, id.* at 712, 587 P.2d at 1247, and also noted that Idaho case law clearly required some proof of prejudice as a prerequisite to a dismissal, *id.* at 713, 587 P.2d at 1248.

Today's opinion for the Court, making no mention of *Neal, supra,* nor of *Bunn, supra,* but returns to the earlier case of *Warden v. Lathan,* 96 Idaho 34, 524 P.2d 162 (1974). The facts of that case are totally dissimilar to this. There, the case was wholly at issue and ready for trial in January of 1971, but passed on four succes-

sive calendar calls. In April of 1973, the defendant moved to dismiss for lack of prosecution, and filed a supporting affidavit which set up *the prejudice of nonavailability of material witnesses.* There was a hearing on the defendant's motion; then it was granted. As this Court's opinion noted: *"In view of all the attending circumstances,* we cannot say that the court abused its discretion in dismissing the action with prejudice." *Warden, supra,* 96 Idaho at 35, 524 P.2d at 163. The majority opinion suggests seeing *Kirkham v. 4.60 Acres of Land,* 100 Idaho 781, 605 P.2d 959 (1980). There, in reversing the order of dismissal, we borrowed the language of the Fifth Circuit Court of Appeals:

> " '[T]he sanction of dismissal is the most severe sanction that a court may apply, and its use must be tempered by a careful exercise of judicial discretion.' [Case cited] The decided cases, while noting that a dismissal [with prejudice] is a discretionary matter, have generally permitted it only in the face of a clear record of delay or contumacious conduct *by the plaintiff."* *Kirkham, supra,* at 784, 605 P.2d at 962 (emphasis added).

*Jensen v. Doherty,* 101 Idaho 910, 623 P.2d 1287 (1981), involved an entirely different circumstances. There the plaintiff was not charged with any delay nor was there any.

On the day of the trial, all parties appearing, the plaintiff informed the court that he was not prepared to proceed with his proof. Defendant moved for and was granted an involuntary dismissal under I.R.C.P. 41(b). *Id.* at 911, 623 P.2d at 1288. The plaintiff appealed, not to challenge the dismissal, but to challenge a prior interlocutory nonappealable order denying a motion for summary judgment. *Id.*

This Court simply declined to consider the interlocutory order, and noted that the defendant made no argument in regard to the involuntary dismissal, *id.,* following which it rather gratuituously observed that it found no abuse of discretion. *Id.* Moreover, the affirmance was almost wholly predicated on this basis:

In addition, it must be noted that the appellant has here failed to comply with a number of provisions of the Idaho Appellate Rules governing presentation of appeals to this court. For example, the appellant's brief fails to set forth either the facts involved in this case or the proceedings had below. The brief also fails to denominate any issues on appeal. See I.A.R. 35. And, appellant fails to provide a sufficient record or any argument concerning the propriety of the involuntary dismissal of his action. Absent compliance with the appellate rules, the court will not review the record for error. Error is never presumed on appeal; the burden of showing it is upon the party alleging it. *Woods v. Crouse,* 101 Idaho 764, 620 P.2d 798 (1980); *Dawson v. Mead,* 98 Idaho 1, 3, 557 P.2d 595 (1976); *Clear v. Marvin,* 86 Idaho 87, 92, 383 P.2d 346 (1963). *Jensen, supra,* 101 Idaho at 911, 623 P.2d at 1288.

With the majority's authority in mind, the stage is set to examine the circumstances attendant to this case, none of which surface adequately, if at all, in the Court's opinion.

Defendant, in support of its Motion for Dismissal, made two arguments. First, it was concerned because of the length of time the case had been pending and that it had not received answers to its interrogatories until the day of the scheduled pretrial conference. Secondly, it argued to the trial court that the plaintiff had not pushed the case forward nor taken any action designed to bring the matter to a prompt conclusion. Tr., Vol. 1, pp. 7–9, and R., Vol. 1, pp. 46–47. Plaintiff would first take issue with defendant on the question of whether or not all of the delay has been caused by plaintiff. A review of the record indicates while the complaint was filed in October of 1978, an answer to the complaint was not filed with the court by the defendant until May 15, 1979. R., Vol. 1, p. 14. In July of 1981, former counsel of record for plaintiff filed an affidavit with the court indicating that settlement negotiations had been ongoing and that plaintiff had not proceeded with litigation in hopes the matter would be

settled. R., Vol. 1, p. 20. When a first trial date was established for the 2nd day of November, 1981, both plaintiff and defendant stipulated to vacate the trial setting. R., Vol. 1, p. 22. On February 10, 1982, defendant's counsel filed a motion to vacate the trial setting, acknowledging plaintiff was involved in Chapter 11 bankruptcy proceedings. R., Vol. 1, pp. 26–27. A stipulation to vacate the trial setting for March 17 and 18, 1982, was thereafter signed by counsel for each of the parties. R., Vol. 1, p. 28. In September of 1983, after the court had dismissed the action, plaintiff's Motion to Set Aside the Order of Dismissal was granted, as both counsel of record indicated to the court that the ongoing bankruptcy proceedings prevented the state court case from going forward. R., Vol. 1, pp. 31–35.

The delay complained of by defendant was in part caused by defendant. Not only did the defendant stipulate to vacate trial settings, but they did, on one occasion, file their own Motion to Vacate Trial Setting based on the ongoing bankruptcy proceedings. Defendant should be estopped from arguing about the delay in light of their own actions.

I respectfully dissent.