765 P.2d 140

**Jeanette T. SHILL,
Plaintiff–Respondent,
Cross–Appellant,**

v.

**Douglas K. SHILL,
Defendant–Appellant,
Cross–Respondent,**

and

**The Public Employees Retirement System of Idaho, acting By and Through the Retirement Board of the Public Employees Retirement System, Defendant.**

No. 16780.

Supreme Court of Idaho.

Nov. 30, 1988.

Parsons, Smith, Stone & Fletcher, Burley, for defendant-appellant, cross-respondent. William Parsons argued.

Jeff Stoker, Twin Falls, for plaintiff-respondent, cross-appellant.

SHEPARD, Chief Justice.

This is a continuation of the proceedings in *Shill v. Shill*, 100 Idaho 433, 599 P.2d 1004 (1979), which involved a divorce and the determination of the community property interest in pension benefits. The remittitur of this Court issued October 2, 1979, and it was not until October 10, 1985, that respondent Jeanette Shill filed an amended complaint seeking a redetermination of the community property interest in the pension benefits. Thereafter the district court granted summary judgment on November 7, 1986, adjudicating the community property interest in the retirement pension benefits. We reverse and remand.

The parties hereto were married September 1957, and in early 1958 Douglas Shill was employed by the fire department of Burley, Idaho, and began contributions from his wages to the Idaho Firemen's Retirement Fund. The parties were divorced by decree entered October 1977, at

which time Douglas Shill had completed 19½ years of employment with the Burley Fire Department. Under the provisions of the statutes, Shill was entitled to pension rights from the Idaho Firemen's Retirement Fund, Title 72, Ch. 14, I.C., but only if he had completed 20 years of such employment. If he terminated prior to completing 20 years he would have received only the contributions he had made.

Although the divorce decree was entered in October 1977, that portion of the judgment dealing with the division of the community property was not entered until March 1, 1978. In that decision the court held that since Shill possessed only the right to receive the cash surrender value of the contributions ($8,089.24), all of which had been contributed during the marriage, such was characterized as community property and ordered divided equally between the parties. Hence, Jeanette Shill was awarded one-half of the cash surrender value of Shill's rights in the Firemen's Retirement Fund.

Upon appeal to this Court the decision of the district court was reversed, *Shill v. Shill, supra,* and for the first time contingent non-vested pension benefits were recognized as divisible community property in Idaho. This Court there indicated that a lump sum award as of the date of divorce was the preferred method of distribution, but the Court realized that such a cash-out method might not always be feasible. It was held that where the community owns few assets, or when present value calculations were inaccurate or difficult, an apportionment to the non-retiring spouse might be made effective if as and when the actual pension benefits were received by the retiring spouse. Therefore, the decision of the trial court was reversed, and the cause was remanded,

> ... [i]n order to effect an equitable disposition of the retirement benefits possessed by this marital community, it will be necessary to remand this matter to the trial court to allow the parties an opportunity to present such evidence as it deems proper on the issue of the disposition of the parties' community property interest in the Firemen's Retirement

Fund. *See Ramsey v. Ramsey,* 96 Idaho 672, 535 P.2d 53 (1975).

Inexplicably it was not until six years later, on October 10, 1985, that respondent Jeanette Shill filed an amended complaint seeking a recalculation and distribution of the retirement benefits. Following the entry of the decree of divorce in October 1977, Douglas Shill had chosen to continue his work with the Burley Fire Department, and continued to make contributions to the Firemen's Retirement Fund. After 24 years of service, Douglas Shill retired on April 14, 1982. By delaying his retirement and continuing to work past the 20–year retirement, the pension benefits increased from 40 to 60 percent of the average fireman's salary.

Upon motion therefore, the trial court on November 7, 1986, granted summary judgment in favor of Jeanette Shill.

The principal issue on this appeal is whether the community interest in Mr. Shill's retirement benefits should be determined, valued, and divided as of the date of the divorce, or at the time the benefits are actually received. We hold that the trial court incorrectly determined the community interest and the value thereof as of the time pension benefits were actually received.

At the outset, we note that had the trial court in the original divorce proceedings determined the then present value of the community property in the pension fund, the non-employee spouse could have been awarded assets of equal value. That present value of the community in the pension fund was before the trial court, but was then rejected by the trial court by reason of its erroneous view of the law. That decision of the trial court was reversed.

Further, if upon remand the matter had been diligently pursued, the then trial court may have been able to make such an equitable division without being required to enter the morass of an attempted division of the pension rights. However, by the time the matter did reach the trial court for the second time, its options were limited

because of the disposition of community assets awarded under the original decree. Thus, the preferred cash-out method of pension division has been thwarted in the instant action. Such an immediate settlement would have disentangled the parties, and would have fully and finally divided the marital property without any contingency.

■ It is asserted that by waiting six years following the remand, respondent procrastinated in the assertion of her rights, and the cause should have been dismissed for want of prosecution. A trial court has inherent power to dismiss for want of prosecution if the plaintiff fails to prosecute with reasonable diligence. *McAllister v. Erickson,* 45 Idaho 211, 261 P. 242 (1927). Such question is addressed to the sound discretion of the trial court, and its ruling will not be disturbed on review in the absence of an abuse of that discretion. *Ellis v. Twin Falls Canal Co.,* 109 Idaho 910, 712 P.2d 611 (1985). We hold that the trial court did not abuse its discretion in failing to dismiss for want of prosecution, nor do we find that the action is barred by any statute of limitation or the doctrine of laches.

The question presented in the instant case is whether the value of the pension benefits should be calculated as of the date of the divorce, or as of the date of actual receipt of the pension benefits. In the instant case the importance of that issue is reflected by the base value of the monthly pension benefits at the various times. Within six months of the time of divorce the pension benefits would have been calculated on a basis of forty percent of the average wage of an Idaho fireman. I.C. § 72–1430(1)(a), (e) (authorizes firemen who voluntarily retire and who are entitled to benefits after twenty years of service, forty percent of the average paid fireman's salary or wage, and after twenty-four years, sixty percent of the same.) As of 1982 when Mr. Shill retired, the pension benefits had risen to sixty percent of the average fireman's wage. The award of the trial court included the increase in the pen-

sion benefits which had accrued following the date of divorce.

■ The question thus presented is one of first impression in Idaho. In a divorce action in Idaho the trial court has broad discretion to equitably divide the community property. However, that discretion is strictly circumscribed by our statutes which delineate separate and community property interests. All property owned by a spouse before marriage is separate property. I.C. § 32–903. Property acquired during marriage is presumed to be community property. *Stanger v. Stanger,* 98 Idaho 725, 571 P.2d 1126 (1977); *Speer v. Quinlan,* 96 Idaho 119, 525 P.2d 314 (1974); *Stahl v. Stahl,* 91 Idaho 794, 430 P.2d 685 (1967). Our statute, I.C. § 32–906, defines community property as all the property acquired after marriage by either husband or wife.

■ I.C. §§ 32–601 and 32–602 provide that marriage is dissolved by death of one of the parties, or by the judgment of a court of competent jurisdiction, and the effect of such a divorce decree is to restore the parties to the state of unmarried persons.

■ In the instant case the trial court awarded the respondent one-half of the pension benefits, valued at the time of actual retirement in 1982. That award included increases in pension benefits accruing after the date of divorce, and hence not acquired during marriage, but during the time the appellant was an unmarried person. As such, those increases constituted the separate property of the appellant, and to the extent that an interest in those post-divorce increases was awarded to respondent, it constituted an impermissible invasion of appellant's separate property.

Although as stated, the question is of first impression in Idaho, it has been ruled upon by courts of other jurisdictions.

The Supreme Court of Arizona, in the case of *Koelsch v. Koelsch,* 148 Ariz. 176, 713 P.2d 1234 (1986), had before it a factual pattern which in part was substantially similar to the case at bar in that it presented the question of a non-employee spouse

having the right to share in increased retirement benefits accrued following divorce. The Court of Appeals in Arizona had so ruled for the non-employee spouse, and the Supreme Court of Arizona reversed. The court stated:

We base our analysis on clearly established community property principles. First, pension plans are a form of deferred compensation to employees for services rendered, and any portion of the plan earned during marriage is community property subject to equitable division and dissolution. (Citations omitted.) We recognize that retirement benefits are often one of a community's most valuable assets. Second, during marriage a husband and wife have an equal, immediate, present, and vested interest in the community assets. (Citation omitted.) When the community property is divided at dissolution pursuant to the mandate of ARS § 25–318, each spouse receives an immediate, present, and vested separate property interest in the property awarded to him or her by the trial court. It is clear that a former spouse loses any interest in and control over that separate property. Finally, it is established law that while the fruits of labor expended during marriage are community property (citation) earnings after dissolution are separate property.

In its exhaustive opinion the court held that to permit a non-employee spouse from sharing in future increases in the pension benefits is improper.

The Court of Appeals attempted to ameliorate the risk of loss faced by the non-employee spouse by devising a formula which would permit that spouse to share in the future increases in the pension benefits. This compromise is improper for several reasons. First, it improperly allows the non-employee spouse to share in the post-dissolution separate property earnings of the employee spouse.

The court continued:

The second problem with the disposition of the retirement assets by the trial court and the court of appeals is that both formulas award a share of the employee spouse's earnings after dissolution to the non-employee spouse.... If the amount of the monthly benefit at retirement is greater than the monthly benefit would have been had the employee spouse retired at the normal retirement date, any increases will be due to the separate labors of the employee spouse.... The court of appeals' formula seems to adopt the proposition that two wrongs make a right. In both denying the non-employee spouse immediate right to separate property benefits and instead awarding that spouse a share of the employee spouse's separate property, the court of appeals has violated two fundamental principles of community property law. We disapprove.

The Supreme Court of Texas in *Berry v. Berry*, 647 S.W.2d 945 (1983), was presented with a similar factual pattern and issue.

The sole question presented for consideration is the value of Elna Berry's interest in the retirement benefits of her ex-husband Giles Berry. The judgment of the trial court awarded Mrs. Berry one-half of such benefits *as would have existed at the time of divorce.* The court of appeals reversed and held that she was entitled to receive 34.21 percent of the retirement benefits *actually received.* (citation). We reverse the judgment of the court of appeals and affirm the trial court's judgment.

The court, quoting *In re Marriage of Ris-ter*, 512 S.W.2d 72 (Tex.App.1974), stated:

However, to the extent that the benefits do increase as a result of future increased earnings, the formula used by the trial court has the effect of awarding benefits accruing to appellant after the divorce from appellee.

We hold that pension benefits accruing as compensation for services rendered after a divorce are not a part of the estate of the parties subject to division on divorce.

The court in *Berry* then stated:

It is clear from the record in this case that twelve additional years of work following divorce, which included some twelve to fourteen pay raises, plus union

contract negotiations for an improved benefits plan, brought about the increase in retirement benefits paid to Mr. Berry. These post-divorce increases cannot be awarded to Mrs. Berry, for to do so would invade Mr. Berry's separate property, which cannot be done.

A similar decision was reached in *Madrid v. Madrid,* 101 N.M. 504, 684 P.2d 1169 (N.M.App.1984). The court held that the community interest in pension benefits must be determined, valued and distributed as of the time of the divorce, and that increases in the pension benefits, "... coming after the date of the divorce, are the husband's separate property ... At the time of the divorce the increases were not even in existence. The increases coming after the divorce, were not 'acquired' until after the divorce, and were the separate property of the husband." *See also Rogers v. Rogers,* 45 Or.App. 885, 609 P.2d 877 (1980), *modified, Rogers v. Rogers,* 50 Or. App. 511, 623 P.2d 1108 (1981); *Graham v. Graham,* 78 Or.App. 665, 717 P.2d 655 (1986).

We are aware, as argued by respondent, that the courts of California have taken a different approach and arrived at different results. *In re Marriage of Freiberg,* 57 Cal.App.3d 304, 127 Cal.Rptr. 792 (1976).[1] However, it is our view that the decisions cited, particularly that of the Arizona Supreme Court in *Koelsch,* constitute the better reasoned authority, and we decline to follow the California approach.

■ In the instant case the decree of divorce was entered October 1977. The employee-spouse's first eligible retirement date was April 14, 1978. His actual retirement date was April 18, 1982. As noted herein, we have held that the determination of, and the valuation of, the pension benefits should occur at the date of the decree of divorce. Since such valuation and an award of a lump sum was not made, and now appears to be not possible, an award is necessary based upon the monthly sum which would have been received if the employee spouse had taken retirement at his first eligibility, *i.e.,* April 14, 1978. *Berry v. Berry, supra; In re Marriage of Rister, supra; Rogers v. Rogers, supra; Graham v. Graham, supra; In re Marriage of Gillmore,* 29 Cal.3d 418, 174 Cal.Rptr. 493, 629 P.2d 1 (1981). In the instant case that date is only six months after the decree of divorce, and hence the difference in value is not deemed significant. There may, of course, arise cases in the future in which the lapse of time between divorce and first eligibility for retirement is of substantial length, and in which therefore the problems will be exacerbated. It is suffice to say that we do not explore those problems today, but leave them to a case-by-case resolution in the future.

Many of the above-cited cases deal with the "risks" which will be encountered by each of the spouses under various theories of distribution of pension benefits upon divorce. It is clear that there can be no amelioration of all risks which might be presented by the enumerable possible scenarios. If, as previously stated, a lump sum cash-out method were utilized, as seems possible in the instant case, the risks to the non-employee spouse would have been eliminated. However, the risk to the employee spouse of death preventing him from receiving any benefits, would remain. Nevertheless, such solution would have the merit of disentangling the parties and their affairs at a finite point in time.

It is also argued that requiring the non-employee spouse to receive a share of the pension benefits if and when the employee-spouse chooses to retire, leaves the option solely with the employee-spouse. We need not address that assertion, since in the instant case the employee-spouse has retired, and the pension benefits have matured and are payable.

Pursuant to our discussion herein, the judgment of the district court is reversed insofar as it purports to award plaintiff

---

1. To the extent that it conflicts with *In re Marriage of Gillmore,* 29 Cal.3d 418, 174 Cal.Rptr. 493, 629 P.2d 1 (1981), In re Marriage of Freiberg, which suggests, in dictum, that the employee spouse can control the time at which the retirement payments to the non-employee will commence, is disapproved.

Jeanette Shill a share of the pension benefits valued at a time post-April 14, 1978. Because of the lack of clarity in the record, and the adjustments which may be required by the trial court, we are unable to delineate a specific sum to be awarded by the trial court. The trial court is directed to award plaintiff, Jeanette Shill, her appropriate share of the pension benefits, calculated as of April 14, 1978.

We further remand for the consideration of the trial court a possible offset to the judgment in the sum of $4,044.62. Again, the record is not clear, however it suggests that there was disbursed to the respondent on June 21, 1979, the sum of $27,898.55. It is asserted that included in that sum was $4,044.62, representing one-half of the cash surrender value of the Fireman's Retirement Fund pension. If such assertion is correct, and since the award of the cash surrender value of the pension fund has been reversed, respondent Jeanette Shill may be overcompensated in the sum of $4,044.62. The trial court on remand is directed to ascertain the facts and make appropriate adjustments, if any.

■ Lastly, it is asserted by respondent cross-appellant Jeanette Shill that accrued interest on her share of the pension fund should be allowed. We disagree. The trial court held, and we agree, that to so assess interest would be to penalize the appellant for the respondent's lack of diligence in timely pursuing the cause. While she has not waived a right to receive her share of the pension benefits, by her delay she has waived her right to claim any interest thereon. Although not argued by either party, the record demonstrates that an order of the trial court was issued ordering defendant (Douglas Shill) to pay to the plaintiff (Jeanette Shill) the sum of $12,000.00, and that on the payment of such amount, execution upon the judgment would be stayed pending the appeal. That matter is not discussed by the parties, and

hence we assume said sum has been paid, since the appeal has gone forward.

The cause is reversed and remanded for further proceedings in accordance herewith. No costs allowed.

BAKES, J., and McQUADE, J. Pro Tem., concur.

BISTLINE, Justice, specially concurring.

This case, and others involving the same or similar issues, have been a source of difficulty for the Court membership. Justice Bakes authored *Shill I.* In my view he wrote an excellent opinion, well-fortified with respectable authority. Notwithstanding that in *Ramsey v. Ramsey* he had written a vigorous dissent,[1] in *Shill I,* he put his *Ramsey* dissent out of mind, and commendably said of *Ramsey* for a 4–1 majority, "*We* reversed and remanded the case [*Ramsey*] to the trial court for a calculation of an appropriate lump sum award to the wife of her share of the community property portion of the retirement pension computed on the present value of the wife's interest in the pension, ..." 100 Idaho at 438, 599 P.2d 1004. He recited what the courts of the community property states of Arizona, California, New Mexico, and Texas had done, and concluded the Court's opinion with this observation:

> However, where the time for retirement is uncertain and where the value of the employee's monthly benefits is dependent upon the number of years of employment at retirement, a factor which may not be known at the time of the divorce, and where maintenance of the pension benefits after divorce will be from the employee spouse's separate property, or the property of a subsequent community, a reasonably accurate calculation of the present value of the pension rights derived from community effort may not be possible. In these cases, the trial court

---

**1.** His ultimate conclusion in the final paragraph of his *Ramsey* opinion was that the controlling High Court case of *Wissner v. Wissner,* 338 U.S. 655, 70 S.Ct. 398, 94 L.Ed. 424 (1950) precluded an Idaho state district court from dealing with the husband's United States military pension.

He added: "There are other ways to give financial security to the wife, such as a disproportionate distribution [in her favor] of the remaining community property, and alimony." 96 Idaho at 684, 535 P.2d at 65.

should consider withholding the retirement rights from the property disposition and decreeing that the parties hold the rights to the benefits as tenants in common. If and when the employee spouse does obtain retirement benefits the trial court can then determine what portion of the rights were derived from community property and divide the payments accordingly.

*Shill v. Shill,* 100 Idaho 433, 439, 599 P.2d 1004, 1010 (1979).

Justice Shepard, who had also dissented in the *Ramsey* case, again dissented in *Shill I,* and in doing so in one fell swoop expressed his disfavor with Justice Bakes' *Ramsey* dissent and also with Justice Bakes' *Shill I* opinion:

> I would add that the majority holding in *Ramsey* was over and notwithstanding the vigorous dissent of the author of today's majority opinion. I find myself no more able to agree with his reasoning today than at the time of *Ramsey.*

*Shill, supra,* at 440, 599 P.2d at 1011.

Today, almost ten years since *Shill I,* Shill II is before us, and, in actual fact, has been since we heard oral argument on November 5, 1987. Counsel for both sides may well surmise that it has not been easy to reach a consensus which commands a majority and holds it, for very long, that is.

Justice Bakes, notwithstanding that he authored *Shill I,* which was explicit in the guidance given the trial court for proceedings on remand, which the trial court appears to have closely followed, is now voting with Justice Shepard, and commendably puts out of mind the taunting administered to Justice Bakes in *Shill I.* Obviously Justice Bakes now sees more merit in the views espoused by Justice Shepard than he did previously, and presently sees more merit in Justice Shepard's views than in Justice Huntley's.

Cast in the position of delivering the swing vote, I cannot help but be impressed with Justice Bakes open-mindedness and his ability to now fully comprehend the merit in Justice Shepard's views that heretofore escaped him, and myself as well. Therefore, being full well cognizant of the length of time that case has gone undecided by this Court, I have concluded to now vote with Justice Shepard. When in doubt, I am reminded that it was the leadership Justice Shepard displayed in his 80 percent unanimous opinion in *Cheney v. Palos Verdes,* 104 Idaho 897, 665 P.2d 661 (1983), which put the shackles on the ill-starred 1972 companion cases of *Cox v. Stolworthy,* 94 Idaho 683, 496 P.2d 682 (1972), and *Jolley v. Puregro,* 94 Idaho 702, 496 P.2d 939 (1972).

HUNTLEY, Justice, dissenting.

The Justices who comprise today's majority have frequently been strong proponents of the rules of *res judicata, stare decisis,* and the "law of the case." Today those doctrines are ignored because they uncomfortably get in the way of the result sought.

In *Shill I* the following rules were laid down at 100 Idaho pages 436 and 437, and 599 P.2d pages 1007 and 1008:

> Douglas Shill's contributions to the fund were made from his wages, *and any property interest attributable to those contributions is a community asset. Kohny v. Dunbar,* 21 Idaho 258, 12 P. 544 (1912); I.C. §§ 32–903 and –906. A fire fighter's interest in the pension fund attributable to fund income from sources other than employee contributions is not a gratuity but a form of deferred compensation accrued by reason of the individual's service and *is also a community property asset to the extent acquired during coverture.*
>
> \* \* \* \* \* \*
>
> Factors which will affect the value of the couple's contingent community property interest in the pension fund include the possibility that the employee-spouse will die or change jobs before satisfying the time requirements for vesting; *the fact that the divorced employee might defer retirement beyond the date that an optional early retirement with monthly pension is available;* and the fact that subsequent to the divorce maintenance of the employee's interest in the pension

fund will likely be made from the employee's separate property, or, if he or she remarries, from the property of a subsequent community.

\* \* \* \* \* \*

*The other method of dividing the rights is to reserve jurisdiction until retirement and divide the actual monetary benefit when received.*

\* \* \* \* \* \*

The advantage of reserving jurisdiction over the pension rights and effecting a division of the actual monetary benefits if and when they accrue is that this approach allocates equally between the parties the risk that the rights may never vest and enables the court *to better determine the actual proportion of the benefits that were derived from community property.* (Emphasis supplied.)

Most importantly, Justice Bakes as author of *Shill I* quoted with approval from an Arizona case on *all fours* with the instant fact situation and approved the formula which the district court used in this case as ordered on remand, that is, one-half of the fraction of the years of marriage over the number of years of service.

In *Van Loan v. Van Loan,* 116 Ariz. 272, 569 P.2d 214 (1977), the Arizona Supreme Court affirmed the trial court's award to the wife upon divorce of a share of her husband's military retirement benefits. The husband had joined the Air Force prior to the marriage and continued to work with the Air Force during the entire seventeen year marriage. The parties divorced prior to the time the husband's right to payment under the pension terms vested. The trial court awarded the wife "an interest in the retirement pay in an amount equal to one-half of the fraction 17 over the number of years served by [husband] in the Air Force if and when received by him." 100 Idaho at 438, 599 P.2d at 1009.

## I. THE ISSUE

Under the Idaho Firemen's Retirement Fund, a fireman accumulates retirement benefits at the average rate of 2% per year of the average state wage for the first twenty years of service (40% total), which rate increases to 5% per year for years 21–25 (65% total).

The issue primarily raised by this appeal is whether, when a divorce occurs near the end of the 20th year and the fireman works four more years, thereby increasing the monthly benefit by about $400,[1] the 3% enhancement (here amounting to about $240 per month) is separate property or whether the added $240 is $^{20}/_{24}$ community property and $^{4}/_{24}$ separate property.

I would affirm the ruling of the trial court that the community interest is determined by a ratio with the years service while married as the numerator and the years of total service as the denominator.

## II. THE BACKGROUND

This is a continuation of the proceedings in *Shill v. Shill,* 100 Idaho 433, 599 P.2d 1004 (1979), which involved a divorce and the determination of the community property interest in pension benefits. Jeanette Shill filed an amended complaint on October 10, 1985, seeking a redetermination of the community property interest in the pension benefits.

Jeanette Shill and Douglas Shill were married September 29, 1957. In April, 1958, Douglas Shill was hired by the City of Burley, Idaho, fire department and commenced making contributions from his wages to the State of Idaho Firemen's Retirement Fund, established pursuant to Title 72, chapter 14, of the Idaho Code. On October 24, 1977, appellant and respondent were divorced. At the time of the divorce, Douglas Shill had completed nineteen-and-one-half years of employment with the City of Burley fire department and had been promoted to the position of Fire Chief.

Douglas Shill was entitled to pension benefits from the Idaho Firemen's Retire-

---

1. For ease of illustration, I use an average state wage of $2,000 per month. (The actual figure at time of retirement was $1,896). Thus, the bene- fit accrued in the first twenty years was $800 and that accrued in the last four years was $400.

ment Fund, Title 72, ch. 14, I.C., but only if he had completed twenty years of employment as a fireman. If he had terminated prior to completing twenty years, he would have only received the actual contributions he had made. In that portion of the original judgment dealing with the division of the community property of March 1, 1978, the trial court held that since Mr. Shill possessed only the right to receive the cash surrender value of the contributions ($8,089.24), all of which had been contributed during the marriage, such was characterized as community property and ordered divided equally. Jeanette Shill was awarded one half the cash surrender value of Mr. Shill's rights in the pension fund.

That decision of the District Court was reversed upon appeal to this Court, "Shill I", supra. In Shill I, we held that contingent non-vested pension benefits are to be considered divisible community property in Idaho. Although this Court indicated that a lump sum award as of the date of the divorce is the preferred method of distribution, the Court realized that such a cash-out method might not always be feasible. In these cases:

> the trial court should consider withholding the retirement rights from the property disposition and decreeing that the parties hold the rights to the benefits as tenants in common. If and when the employee-spouse does obtain retirement benefits the trial court can then determine what portion of the rights were derived from community property and divide the payments accordingly.

599 P.__ at 1010.

It was in this light that this Court remanded this matter to the trial court for a determination of the community property interest in the Firemen's Retirement Fund.

On October 9, 1985, the respondent Jeanette Shill filed an amended complaint seeking a recalculation and distribution of the retirement benefits. Douglas Shill chose to continue his work with the Burley fire department after the entry of the divorce decree, and continued to make contributions to the Firemen's Retirement Fund. By postponing retirement and continuing to work past the threshold twenty year requirement, Mr. Shill's pension benefits increased from 40 to 60 percent of the average fireman's salary, or from approximately $800 per month to $1,200 per month.

### III.

Mr. Shill asserts that by waiting six years following the remand, Mrs. Shill procrastinated in the assertion of her rights, and the cause should have been dismissed for want of prosecution. However, either party could have noticed the case for trial following the remand. A trial court has inherent power to dismiss for want of prosecution if the plaintiff fails to prosecute with reasonable diligence. McAllister v. Erickson, 45 Idaho 211, 261 P. 242 (1927). Such question is addressed to the sound discretion of the trial court, and its ruling will not be disturbed on review in the absence of an abuse of that discretion. Ellis v. Twin Falls Canal Co., 109 Idaho 910, 712 P.2d 611 (1985). I would hold that the trial court did not abuse its discretion in failing to dismiss for want of prosecution, and I further hold that the action is not barred by any statute of limitations or the doctrine of laches.

### IV.

In Shill I, this Court held that a pension fund, whether vested or non-vested, is a form of deferred compensation, which is attributable to the prior employment period in which it was accumulated, and which is a community asset to the extent that community efforts contributed to the pension benefits. Shill v. Shill, 100 Idaho 433, 599 P.2d 1004 (1979). See also, Griggs v. Griggs, 107 Idaho 123, 686 P.2d 68 (1984); Ramsey v. Ramsey, 96 Idaho 672, 535 P.2d 53 (1975). Holdings in California cases parallel these Idaho cases and state the proposition as follows:

> Where the total number of years served by an employee-spouse is a substantial factor in computing the amount of retirement benefits to be received by that spouse, the community is entitled to have its share based upon the length of service performed on behalf of the commu-

nity in proportion to the total length of service necessary to earn those benefits. The relation between years of community service to total years of service provides a fair gauge of that portion of retirement benefits attributable to community effort.

*In re Marriage of Judd,* 68 Cal.App.3d 515, 522–23, 137 Cal.Rptr. 318, 321 (1977).

Returning to the case at bar, in this appeal we are asked to review the ruling of the district court which ruled:

[T]hat the plaintiff is entitled, as a matter of law, to one-half of the community interest in the defendant's pension fund, and that such interest is to be determined by the husband's monthly benefits received multiplied by a fraction which has as its numerator the total number of years the defendant was employed by the Burley Fire Department during the marriage, and as its denominator the total number of years of the defendant's employment at the Burley Fire Department.

The formula applied by the district court operated in this case as follows to determine Jeanette's one-half of the community interest:

$$\frac{1}{2} \times \frac{7{,}128 \text{ days married as fireman}}{8{,}176 \text{ days employed as fireman}}$$

or

$$\frac{1}{2} \times .8137 \text{ or } 40.7\%$$

Thus, Jeanette's share was fixed at 40.7% of the total benefits each month (or approximately $488.40 per month) and Douglas' share at 59.3% (or approximately $711.60 per month). Approximately 80% of the benefits were held to be community property, with 20% being Mr. Shill's separate property. I would approve of the formula applied by the district court.

The fundamental premise of *Shill I* was that:

A firefighter's interest in the pension fund attributable to fund income from sources other than employee contributions is not a gratuity but a form of deferred compensation accrued by reason of the individual's service and is also a community property asset to the extent acquired during coverture.

599 P.2d at 1007. *See also Guy v. Guy,* 98 Idaho 205, 560 P.2d 876 (1977); *Travelers Ins. Co. v. Johnson,* 97 Idaho 336, 544 P.2d 294 (1975).

When one puts the issue as deciding whether the increase (from forty percent to sixty percent of the average state wage) is earned in part during marriage or whether it is *totally* the product of the husband's separate efforts, it is clear that that issue has already been decided in *Shill I.* *Shill I* found that the post-divorce increase from mere cash surrender value to forty percent benefits which accrued six months after divorce, was the product of work performed during the nineteen-and-a-half years of marriage.

Similarly, it is equally clear that the higher percentage was earned only by virtue of the first nineteen-and-a-half years of work; without those first nineteen-and-a-half years during marriage, there would be *no* ability to accumulate benefits at the higher level for years 21 through 24. Indeed, the very contingent which we now face was anticipated in *Shill I* when Justice Bakes wrote for the court:

Factors which will affect the value of the couple's contingent community property interest in the pension fund include the possibility that the employee-spouse will die or change jobs before satisfying the time requirements for vesting; the fact that the divorced employee might defer retirement beyond the date that an optional early retirement with monthly pension is available; ...

599 P.2d at 1008.

In addition, *Shill I* states that "[t]he other method of dividing the rights is to reserve jurisdiction until retirement and divide the *actual monetary benefit* when received." 100 Idaho at 437, 599 P.2d 1004 (emphasis added). The "actual monetary benefit" in this case is approximately $1,200 per month (or 60%), not $800 per month (40%).

The district court correctly followed *Shill I* when it ruled that four-fifths was

community property and subject to division, and one-fifth was Mr. Shill's separate property.

The increases in the pension fund in the instant case over the final four years of employment are not completely due to the separate efforts of the employee-spouse, but rather, the right to the increase from forty to sixty percent of the average state wage was built upon the first twenty years of work, which were during marriage. The increase from forty to sixty percent was not earned by the last four years of work alone.

Sixteen percent more work did not in and of itself produce fifty percent more benefits. The increase, instead, is a deferred compensation for the aggregate of twenty-four years, not four years alone.

The issue in the instant case is straightforward: Was the enhancement in pension benefits due to postponed retirement the product of the total aggregate of service (i.e., twenty-four years) both during and after marriage, or was it solely the result of the last four years of Mr. Shill's employment? *Shill I* stands for the proposition that the enhancement in benefits, whether from cash surrender value to 40%, or from 2% per year to 5% per year, is the product of the aggregate of employment. The first year on the job was equally as important to

the final level of benefits as is the twenty-fourth.[2]

Accordingly, I would affirm the trial court's methodology and remand for entry of judgment in accordance therewith. However, on remand, the computation should take into consideration the extent that the increase in benefits due to a continuation of work after divorce was the result of higher income based upon more work or greater responsibility, because that portion of the enhancement in benefits would be separate property. On remand, the trial court should be directed to ascertain whether there was an increase in work or responsibility after divorce which influenced the ultimate level of benefits and calculate that portion, if any, as the separate property of the husband.

On remand, the trial court should also consider whether the sum of $4,044.62 is an offset to the judgment to be entered in favor of Jeanette. Although the record is not totally clear, it suggests that there was disbursed to the respondent on June 21, 1979, the sum of $27,898.55. Included in that sum was $4,044.62 which represented one-half of the cash surrender value of the Firemen's Retirement Fund pension. If this is correct, and since the award of the cash surrender value of the pension fund has been reversed in *Shill I*, Jeanette may be overcompensated in the sum of

---

**2.** There are two ways to mathematically compute the result, the first of which demonstrates the logic of the apportionment between community and separate property, with the second and simpler formula (used by the trial court) reaching the same mathematical result.

### METHOD I

|  |  | Community | Separate of H |
|---|---|---|---|
| The $800 from 1st 20 years: |  | $800 | –0– |
| The $400 from last 4 years |  |  |  |
| (a) 2% × 4 years or 8% × $2,000 = |  | –0– | $160 |
| (b) 3% × 4 years or 12% × $2,000 = | $240 | 200($20/24$) | 40($4/24$) |
|  |  | $1,000 | $200 |
| ½ of Community Property to each |  | 500(wife) | 500(husb) |
| Separate Property to Husband |  | –0– | 200 |
| TOTAL to each |  | $500Wife | $700Husb |

### METHOD II

|  |  | Wife | Husband |
|---|---|---|---|
| Com. Prop. = $20/24$ or $5/6$ × $1,200 = | $1,000 | 500 | 500 |
| Sep. Prop. = $4/24$ or $1/6$ × $1,200 = | 200 | –0– | 200 |
|  |  | $500 | $700 |

$4,044.62 unless an adjustment is made in the final order. The trial court should be directed to ascertain those facts and make the appropriate adjustments, if any.

## V. INTEREST

As to Jeanette's cross-appeal from the denial of interest on previously paid benefits, I would reverse the ruling of the trial court on this issue and further remand.

The record establishes that as of the time of entry of the trial court's order, Douglas had received $24,146.25 in retirement benefits, no part of which he paid over to Jeanette.

Even though there was some delay in noticing this case to trial following remand, Jeanette has not waived her right to receive her share of previously paid benefits. Because the husband had use of money which legitimately was owing to the wife, and did not even pay over to her that amount which would be due even under his theory of the case, the wife should be awarded interest on her share of the previously paid benefits.

The foregoing analysis is totally consistent with what the law is, what it ought to be, and with the law of the case as settled in *Shill I*. The bench and bar may wonder why the majority fails to address or distinguish or overrule the law of this case as set forth in *Shill I*—I have the same question.