834 P.2d 864

**Glenn R. JACKSON and Lynn Jackson, husband and wife, Plaintiffs-appellants,**

v.

**OMNIBUS GROUP, LTD., an Idaho corporation; Bob Burleson, Charles Loch, Wallace Abbs and Dewayne Stratton, Defendants-respondents.**

**No. 19194.**

Supreme Court of Idaho, Boise, March 1992 Term.

June 11, 1992.

Rehearing Denied Aug. 21, 1992.

---

Lukins & Annis, Coeur d'Alene, for plaintiffs-appellants. Charles W. Hosack, argued.

Scott W. Reed, Coeur d'Alene, for defendants-respondents.

BAKES, Chief Justice.

Appellants Glenn R. and Lynn Jackson brought an action against respondent Omnibus Group, Ltd., for breach of contract, fraud, and misrepresentation which allegedly arose through the sale of a business by the Jacksons to Omnibus. The Jacksons appeal the district court's involuntary dismissal of their case with prejudice.

For a number of years prior to 1983, Glenn Jackson was the sole stockholder, president and general manager of Ponsness–Warren, Inc. (P–W), a business which made shot shell and metallic loading equipment in Rathdrum, Idaho. In 1983, Jackson negotiated to sell his stock ownership in P–W to Omnibus, Ltd., whose shareholders were Wallace Abbs, Charles Loch, L.B.

Burleson, and Dewayne Stratton. The sale was final on May 3, 1983.

Prior to the sale, P–W had been experiencing financial difficulties and had been warning its creditors of the possibility of bankruptcy for several months. As part of the sale documentation, Burleson, Loch and Abbs each entered into a written agreement with Jackson to defend and indemnify him against possible future claims by P–W.

After the sale, on May 31, 1983, P–W filed for Chapter 11 bankruptcy. The bankruptcy trustee brought suit against Jackson in bankruptcy court to collect certain debts which Jackson apparently owed to P–W. Jackson tendered the defense of the claim to the defendants, who refused to defend him. During the same period, because of P–W's financial difficulties, Omnibus did not fulfill its payment obligations to Jackson pursuant to the terms of the contract of sale.

On June 6, 1984, Jackson filed suit against Omnibus and each individual shareholder, alleging breach of both the contract of sale and the indemnity agreements, fraud, and misrepresentation. The defendants filed an answer on July 5, 1984, raising the affirmative defenses of waiver, estoppel, release, and failure of consideration. They later amended their answer to add the affirmative defense of fraud in the inducement of a contract. The defendants alleged in their answer that the P–W ledgers were not correct; corporate debts were far greater than Jackson had represented; Jackson had filed no corporate income tax in 1982; past due account activity had not been entered into the books for six months prior to the sale; and Jackson had purchased personal property with P–W funds.

On September 24, 1986, the bankruptcy trustee was awarded a $127,000 judgment against Jackson. Jackson entered into an agreement with the trustee that the judgment could be satisfied by payment of $25,000 before December 24, 1986. On September 23, 1986, the defendants offered Jackson $25,000 to settle the suit; Jackson did not accept the offer. The defendants then offered to buy the trustee's $127,000 judgment against Jackson from the bank-

ruptcy trustee, who accepted the offer over Jackson's protest. On December 1, 1986, Jackson offered to settle for $45,000, with $25,000 applied toward the judgment and $20,000 in cash. The defendants did not accept or respond to the offer. Jackson ultimately paid the defendants $25,000 to satisfy the judgment on December 23, 1986.

On September 4, 1986, Jackson filed a motion for partial summary judgment on the indemnity claim. The trial court granted Jackson's motion on June 5, 1987, but held that the judgment would be subject to offset by any damages the defendants might ultimately prove at trial. The defendants then filed a motion for reconsideration, which the trial court granted, holding on July 17, 1987, that the partial summary judgment was not for $127,000 but would be an amount determined at trial.

Nothing more occurred in this case until October 3, 1990, when counsel for the Jacksons inquired of the defendants' counsel about either settling the case or bringing it to trial. The defendants responded on October 6, 1990, by filing a motion for involuntary dismissal for lack of prosecution pursuant to I.R.C.P. 41(b).[1] The trial court granted the motion and dismissed the case with prejudice. The Jacksons appealed the trial court's dismissal of their case.

■ When dismissing an action pursuant to I.R.C.P. 41(b), a trial court must "consider the length of delay occasioned by the plaintiffs' failure to move the case, any justification for the delay, and the resultant prejudice to the defendant." *Day v. CIBA Geigy Corp.*, 115 Idaho 1015, 1017, 772 P.2d 222, 224 (1989). *See also, Rudy–Mai Farms v. Peterson*, 109 Idaho 116, 705 P.2d 1071 (Ct.App.1985). Furthermore, "unreasonable delay creates a presumption of prejudice to the defendant's case." *Ellis v. Twin Falls Canal Co.*, 109 Idaho 910, 912, 712 P.2d 611, 613 (1985). *See also, Grant v. City of Twin Falls*, 113 Idaho 604, 746 P.2d 1063 (Ct.App.1987). This Court will not reverse a trial court's decision to dismiss a case absent a manifest abuse of discretion. *Day v. CIBA Geigy Corp., supra; Kirkham v. 4.60 Acres of Land,* 100 Idaho 781, 605 P.2d 959 (1980).

■ In this case, the trial court expressly considered the *Day* requirements. The trial court made clear that the period of inactivity lasted over three years, "from August 4, 1987 until October 3rd, 1990." The trial court also considered at length the plaintiffs' various justifications for the delay. The Jacksons' contended that the corporate books were as available at the time of the court's ruling to dismiss as they had been at any time previously. The trial court rejected this argument, pointing out that the plaintiffs had made no attempt to show exactly where those books were, indicating that they had no such knowledge. The Jacksons also argued that they thought the offer to settle for $25,000 was still in effect. The trial court also discounted this argument, pointing out, among other things, that the plaintiffs "did not reopen communication" by referring to the settlement offer, but instead inquired about negotiating or preparing for trial. The trial court concluded that "[u]nder these circumstances the court does not find it credible that Plaintiffs believed there was an outstanding settlement offer from Defendants which they could accept at their pleasure." Finally, Jackson claimed that his graduate school attendance at the University of Idaho prevented him from pursuing his claim. However, as the trial court stated, Mr. Jackson's statements "indicate that it was simply more convenient for him not to be bothered with the litigation while pursuing his education. No satisfactory reason is made to appear why Plaintiff's case could not have been prepared for trial and presented to the court during some vacation period in the academic year."

Regarding the third criteria, the prejudice to the defendants, the trial court pointed out that one defendant, Dewayne Strat-

---

1. I.R.C.P. 41(b) reads in part: "For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him.... If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a)."

ton, could not be located and was "likely to be a very important witness to the Defendants," and that defendants Bob Burleson and Charles Lock had moved to California and were equally unavailable. The court also found that "the books and records of Ponsness–Warren, for whatever reason, are no longer available to Defendants, that Defendants did not intentionally dispose of such records and that the records would be vital to preparation of Defendants' case herein."

Based on its consideration of these criteria, the trial court held:

It is the court's conclusion that the period of delay from August 4, 1987, until October 3, 1990, was a lengthy and unreasonable delay. It was not brought about by nor expressly acquiesced in by the Defendants.

It is the further conclusion of the court that Plaintiffs have not offered any justifiable reason or excuse for this delay.

It is further the conclusion of this court that Defendants have established substantial and serious prejudice because of the unavailability of witnesses and the books and records of Ponsness–Warren, Inc.

Finally, it is the conclusion of the court that Defendants' motion for involuntary dismissal with prejudice should be granted. It is so ordered.

We conclude that the trial court acted within its discretion by granting the defendants' motion for dismissal. The court carefully considered each of the factors required by *Day v. CIBA Geigy Corp.*, *supra*, and substantial evidence supports each of the court's findings. The record contains specific evidence of prejudice in the record—key witnesses had disappeared and the books of the corporation were no longer available. Furthermore, the trial court found that the plaintiffs' excuses for the delay were unpersuasive. Under these circumstances, we conclude that the trial court did not abuse its discretion by granting the defendants' motion to dismiss the case.

■ The Jacksons argue that since the statute of limitations on their indemnification claim had not run when the trial court dismissed the case, the delay could not have been prejudicial to the defendants. We disagree. As the trial court explained in its order denying appellant's motion for reconsideration, the applicability of the statute of limitations is irrelevant to an I.R.C.P. 41(b) dismissal.

The reasons for … diligent prosecution are (1) to protect the court processes and (2) protect litigants from abuse.… Neither of these reasons has anything to do with the statute of limitations other than the general public policy that it is undesirable to attempt to litigate stale claims. That general public policy underlies both the legislative enactments of statute of limitations and the judicial rules for diligent prosecution. The statute of limitations tells the prospective litigant that he must commence his action within a prescribed time and I.R.C.P. 41(b) tells the litigant that once he has commenced the litigation, he must diligently pursue it. The statute of limitations and the rule speak to different time periods. The first speaks to a time limitation prior to filing the complaint and the second speaks to timely procedures after the complaint is filed.

There would be little to gain in a construction of I.R.C.P. 41(b) that held (1) that there could be no dismissal of an action still viable under the statute of limitations or (2) that such a dismissal should be without prejudice. Under the first, the rule would be totally ineffective to serve its purposes. Under the second, a dismissal and subsequent refiling would be only a paper exercise leaving the court and defendant in the same position they were before.

We agree with the trial court's rationale. Statutes of limitation and I.R.C.P. 41(b) were enacted to advance different policies. Accordingly, we affirm the trial court's decision to dismiss this case pursuant to I.R.C.P. 41(b).

BISTLINE, JOHNSON and McDEVITT, JJ., and REINHARDT, J. Pro Tem., concur.